UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA

| | |
|---|---|
| In re Amie Adelia Vague, et al. | Case No. 2:22-mc-03977-WKW |

## PRE-HEARING SUBMISSION OF *WALKER* COUNSEL

Undersigned counsel respectfully makes this submission in advance of the May 20, 2022 hearing on behalf of Plaintiffs' counsel in the *Walker v. Marshall* action ("*Walker* Counsel").[1]

Section I provides the Court with factual information relevant to the matters set forth in the May 10, 2022 Order (ECF No. 1). Put simply, there are two distinct groups of Plaintiffs' counsel at issue in this matter—*Walker* Counsel and counsel for Plaintiffs in the *Ladinsky* and *Eknes-Tucker* actions. These two groups did not

---

[1] *Walker* Counsel consist of lawyers from: ACLU National ("ACLU") (Chase Strangio, James Esseks, Li Nowlin-Sohl, and Malita Picasso), ACLU of Alabama (Kaitlin Welborn and Latisha Faulks), Lambda Legal (Tara Borelli, Carl Charles, Sruti Swaminathan), Transgender Law Center ("TLC") (Dale Melchert, Lynly Egyes, and Milo Inglehart), and Cooley LLP ("Cooley") (Adam Katz, Andrew Barr, Elizabeth Reinhardt, Julie Veroff, Katelyn Kang, Kathleen Hartnett, Robby Saldaña, Valeria Pelet Del Toro, and Zoe Helstrom).

1

coordinate legal challenges to Alabama's ban on healthcare for transgender minors. To the contrary, they sought to litigate separately. When, within the course of less than 12 hours, and under exigent circumstances, the *Walker* and *Ladinsky* cases were before the same court, the groups independently decided to voluntarily dismiss their cases and subsequently unsuccessfully attempted to collaborate. But after dismissing their case on April 16, 2022, *Walker* Counsel very quickly realized that the number of organizations, strategic differences, and lack of an established decision-making structure made such a large, collaborative effort impossible. Accordingly, none of the lawyers representing the Plaintiffs in *Walker* refiled a case challenging the felony healthcare ban after voluntarily dismissing *Walker* (nor had any imminent plans to) and were not part of any such refiling.

Section II discusses relevant law, making clear a party's absolute right to voluntarily dismiss without prejudice prior to the filing of an answer—which is what *Walker* Counsel did here. "Court-ordered sanctions should be neither 'a consequence' of a voluntary dismissal without prejudice nor a 'condition' placed upon such dismissal." *Bechuck v. Home Depot U.S., Inc.*, 814 F.3d 287, 292-93 (5th Cir. 2016) (quoting *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 396–97 (1990)).

## I.      FACTUAL BACKGROUND

*Walker* Counsel are twenty-one lawyers from five different organizations who appeared as counsel on filings for Plaintiffs in *Walker v. Marshall*. These five organizations are ACLU, ACLU of Alabama, Lambda Legal, TLC, and Cooley. Most of the individuals from each team are not decisionmakers and many are junior lawyers.

ACLU, Lambda Legal, and TLC are three of many groups working in the LGBTQ legal advocacy space. Other such groups include the National Center for Lesbian Rights ("NCLR"), GLBTQ Legal Advocates & Defenders ("GLAD"), Southern Poverty Law Center ("SPLC"), and Human Rights Campaign ("HRC"), who are among the counsel for Plaintiffs in *Ladinsky v. Ivey* and *Eknes-Tucker v. Marshall* ("*Ladinsky* Counsel"). These LGBTQ advocacy groups collaborate and share information in some circumstances, and sometimes bring joint cases. At the same time, these groups are all independent actors, often file separate cases, and at times pursue differing strategies in litigation. On many issues (for example, in litigation over the rights of same-sex couples), these organizations (or groups of these organizations) filed separate litigation challenging the same law or constitutional amendment, sometimes in closely related jurisdictions. Commencing separate litigation is sometimes necessary because the organizations have different clients and because they at times take different approaches to what legal claims to

3

make and how to frame specific legal arguments. Each organization tends to feel strongly about its preferred approach.

In both 2020, and again in 2021, the Alabama Legislature considered but did not pass a transgender youth healthcare ban like the felony healthcare ban that ultimately passed in 2022. ACLU, Lambda, and ACLU of Alabama together started preparing to challenge that law. Leading up to the 2022 legislative session, the Alabama Legislature indicated that it might again take up this issue in Senate Bill 184 ("SB 184") and House Bill 266 "(HB 266"), the felony healthcare ban. *Walker* Counsel resumed preparations, this time joined by TLC.

As they prepared for potential litigation, *Walker* Counsel were aware that other plaintiffs, represented by *Ladinsky* Counsel, were likely to file suit if the law passed. *Walker* Counsel and *Ladinsky* Counsel had minimal communication about their respective planned filings. Prior to the public filings of the two cases, *Walker* Counsel were generally aware that *Ladinsky* Counsel planned to sue in the Northern District and told *Ladinsky* Counsel that they were likely to file in the Middle District. The two groups did not share any of their filings or discuss case strategy. Indeed, *Walker* Counsel intended to keep its lawsuit separate from the *Ladinsky* lawsuit and did not want the cases to be combined into one lawsuit with counsel from seven different advocacy organizations plus several law firms.

On the last day of the Legislative Session—April 7, 2022—the House voted on the bill, which was sent to the Governor for signature. Governor Ivey signed it into law the next day, April 8, 2022. The bill had an "emergency" provision that caused it to go into effect 30 days after signing. *Walker* Counsel thus went into an immediate scramble to finalize the complaint, the motion for temporary restraining order and preliminary injunction, and associated declarations from Plaintiffs and experts. Working as quickly as they could, *Walker* Counsel filed suit on Monday, April 11, 2022 in the Middle District, where the Walker family resides, as do two of the three *Walker* Defendants. *Walker* Counsel became aware on Monday, April 11, 2022 that the other plaintiff group had already filed the *Ladinsky* suit in the Northern District.

*Walker* Counsel marked their suit as related to *Corbitt v. Taylor*, an action before Judge Thompson of the Middle District challenging Alabama's refusal to provide transgender people with driver licenses that reflect their gender without evidence of surgical intervention. In *Corbitt*, Judge Thompson granted judgment to plaintiffs after trial on the papers and enjoined the law in early 2021.[2] However, *Walker* Counsel were then informed by the Clerk's Office that they needed to file a

---

[2] *Corbitt* is now on appeal and was argued before the Eleventh Circuit on March 15, 2022. Although the district court docket in *Corbitt* indicates that the case is "closed," that is because the case is currently on appeal and still pending. If Judge Thompson's decision in *Corbitt* is affirmed, there will be post-trial motions before Judge Thompson, including for attorneys' fees. *Corbitt* might also be remanded to Judge Thompson.

5

Motion to Reassign in order to have the case related to *Corbitt*. Pursuant to this guidance, *Walker* Counsel filed a Motion to Reassign on April 12, 2022, explaining the overlapping issues in *Walker* and *Corbitt*. *Walker* Counsel also filed a motion for temporary restraining order and preliminary injunction on April 12, 2022.

On April 13, 2022, Chief Judge Marks issued an Order to Show Cause, with response due by April 14, 2022, as to why *Walker* should not be transferred to the Northern District "where it may be decided with *Ladinsky* to avoid the possibility of conflicting rulings, and to conserve judicial resources." As of midday on April 14, 2022, *Ladinsky* was assigned to Judge Axon in Birmingham. *Walker* Counsel preferred to keep their case in the Middle District but, in light of the exigency of the situation and what *Walker* Counsel believed to be the very high likelihood that Chief Judge Marks would transfer *Walker* to the Northern District, responded to the Order to Show Cause by explaining why they filed in the Middle District and moved to reassign, but also stating that they did "not oppose transfer to the Northern District so that this matter can be adjudicated alongside *Ladinsky*."

On the morning of Friday, April 15, 2022, Chief Judge Marks transferred *Walker* to the Northern District. *Walker*, M.D. Ala. ECF No. 20, at 2. *Walker* was then assigned to Judge Burke in Huntsville. It was only at this point that *Walker* Counsel and *Ladinsky* counsel began discussing consolidation, as their lawsuits were now in the same district. *Walker* Counsel learned from *Ladinsky* Counsel that the

6

Alabama Attorney General's Office (counsel for Defendants in both cases) was planning to file a motion to consolidate the two cases before Judge Axon in Birmingham. The *Walker* and *Ladinsky* Plaintiffs both indicated to the Attorney General's Office their consent to consolidation in Birmingham. However, before the Attorney General filed its motion, Judge Axon transferred the *Ladinsky* case to Judge Burke in Huntsville. Just after 4:00 p.m. local time on Friday, April 15, 2022 (which was Good Friday and the beginning of a holiday weekend that included Easter and Passover), Judge Burke ordered a status conference that coming Monday, April 18 at 10:00 a.m. local time.

As *Walker* Counsel considered the prospect of consolidating the *Walker* and *Ladinsky* cases over the course of that Thursday and Friday, April 14-15, it became increasingly clear that combining the two cases would not be a simple task. The two complaints contained some differing claims, some of the overlapping claims were framed in divergent ways, and the two teams relied on different expert witnesses. The combined cases would involve eight advocacy organizations and three law firms, with different strategic views and approaches and no established decisional structure (given that the two groups had newly been placed together), facing incredible time pressure. In addition, *Walker* Counsel (nearly all of whom are not physically located in Alabama) now faced the prospect of a joint appearance (and the need for significant coordination among the now-11 legal entities) scheduled for

the next business day following a holiday weekend. Only one attorney on the *Walker* team was at that time admitted in the Northern District, with the remainder of the team preparing *pro hac vice* motions for the new venue. Additional considerations, some of which implicate attorney-client privilege and work product, were also at issue.³ And, of course, a decision had to be made imminently, because if the State were to immediately file an answer, voluntary dismissal without prejudice under Rule 41 would no longer be available. It was against this exigent backdrop—without any decisions having been made about whether to refile, when to refile, or where to refile—that *Walker* Counsel decided to press pause and dismiss its case without prejudice. This would give the group additional time to consider next steps, *if any*.

*Ladinsky* counsel came to the same decision independently, and both groups informed each other of their decision; shared drafts of their respective notices to voluntarily dismiss (they had shared no drafts of any of their substantive filings); and filed notices of voluntary dismissal. The two sets of counsel agreed to make a good faith effort to try to work together on a consolidated lawsuit.

Thereafter, on Saturday April 16, 2022, *Walker* Counsel and *Ladinsky* Counsel conferred in good faith about potentially refiling suit together. Once again, *Walker* Counsel had by that point reached no decisions as to whether, when or where

---

³ Should the Court determine that it is necessary to enquire further into these considerations, *Walker* Counsel respectfully request the opportunity to do so *in camera*.

8

to refile. During the April 16 discussions between counsel, it quickly became clear that the entire counsel group—involving an unwieldy number of firms and legal organizations—would not be able to work together to file a single lawsuit, at least not as quickly as required given the exigencies of the law. Unsurprisingly, the two sets of advocacy organizations—although having the shared goal of invalidating the felony health care ban—did not have the same vision as to how the case would proceed or an established decisional structure that would permit the rapid decision-making necessary under the circumstances.

In light of these circumstances, *Walker* Counsel stepped away from further litigation. ***Walker* Counsel did not refile any action or have any imminent plan to do so. *Walker* Counsel did not participate in the refiling of any litigation.** *Walker* Counsel is not counsel in *Eknes-Tucker*, nor in any pending litigation in Alabama related to the felony healthcare ban.

## II.   LEGAL FRAMEWORK

Federal Rule of Civil Procedure 41(a)(1)(i) authorizes plaintiffs to voluntarily dismiss a complaint without prejudice so long as the notice of voluntary dismissal is filed "before the opposing party serves either an answer or a motion for summary judgment." A Rule 41(a)(1) dismissal puts the plaintiff "in a legal position as if he had never brought the first suit." *Bechuck v. Home Depot U.S.A., Inc.*, 814 F.3d 287, 293 (5th Cir. 2016); *see, e.g.*, *Cline v. Ultimate Fitness Group,* LLC, 2018 WL

7287152, at *1 (M.D. Fl. May 10, 2018) (explaining that under Eleventh Circuit precedent, Rule 41(a)(1) returns plaintiff to pre-complaint position (citing *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 509 (11th Cir. 1999))).

Here, as described above, this is all that *Walker* Plaintiffs and *Walker* Counsel have done—voluntarily dismissed their Complaint, as fully countenanced under the Federal Rules, placing them in the same position as they were before filing. As noted above, they made that decision quickly and as a rapid series of events unfolded on Friday, April 15, 2022, and in order to maintain the status quo before deciding how to proceed further. Ultimately, *Walker* Counsel *did not* refile any complaint and they were not part of filing the *Eknes-Tucker* case.

Even had *Walker* Counsel refiled, however, after voluntarily dismissing without prejudice, "the plaintiff is free to return to the dismissing court or other courts at a later date with the same claim" and can "choose his forum anew." *Id.* (citations omitted)); *see also Cline*, 2018 WL 7287152, at *1 (explaining that following a voluntary dismissal under Rule 41(a)(1), the "plaintiff is free to return to the same court or other courts at a later date with the same claim" and could very well use such dismissal to "secure their preferred forum" (citing *Harvey Specialty & Supply, Inc. v. Anson Flowtime Equip., Inc.*, 434 F.3d 320, 324 (5th Cir. 2005))).

"Court-ordered sanctions should be neither 'a consequence' of a voluntary dismissal without prejudice nor a 'condition' placed upon such dismissal." *Bechuck*

*v. Home Depot U.S., Inc.*, 814 F.3d 287, 292-93 (5th Cir. 2016) (quoting *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 396–97)). In rejecting sanctions for voluntary dismissals under Rule 41(a)(1)—even assuming they were made for the purpose of forum shopping—courts have made clear that the "reason for the dismissal is irrelevant under Rule 41(a)(1)." *Adams v. USAA Cas. Ins. Co.*, 863 F.3d 1069, 1080–81 (8th Cir. 2017); *see Bechuck*, 814 F.3d at 293 ("Rule 41(a)(1)(i) essentially permits forum shopping").

In *Adams v. USAA Casualty Ins. Co.*, 863 F.3d 1069, 1073, 1080 (8th Cir. 2017), after a year and a half of litigation before the district court, the plaintiffs and defendants stipulated to voluntary dismissal without prejudice under Rule 41(a)(1) and re-filed the case in state court in order to certify a stipulated class action that the parties had negotiated but that the district court had not approved. The district court imposed Rule 11 sanctions against counsel for plaintiffs and defendants for abusing the judicial process, but the Eighth Circuit reversed, holding that "stipulating to a dismissal under Rule 41(a)(1) for the purpose of forum shopping and avoiding an adverse result" was not "sanctionable conduct." *Id.* at 1080.

Likewise, in *Wolters Kluwer Fin. Servs., Inc. v. Scivantage*, 564 F.3d 110 (2d Cir. 2009), the Second Circuit reversed the imposition of non-monetary sanctions on plaintiffs' attorneys, where the district court had imposed the sanctions based on its finding that the attorneys dismissed the case under Rule 41(a)(1)(i) in order to

11

"judge-shop" and "conceal from its client deficiencies in [their] advocacy." *Id.* at 114. The Second Circuit accepted the district court's findings regarding counsels' motives for dismissing, but held that this conduct could not be sanctionable because the dismissal was specifically "permitted by the rules." *Id.* at 114-15. The court explained that even if the dismissal was done to "flee the jurisdiction or the judge," it cannot be a basis for sanctions. *Id.*

As the Fifth Circuit has explained, "we have 'consistently held that Rule 41(a)(1) means what it says ... [and] [d]efendants who desire to prevent plaintiffs from invoking their unfettered right to dismiss actions under Rule 41(a)(1) may do so by taking the simple step of filing an answer." *Bechuck*, 814 F.3d at 293 (alterations in original) (quoting *Carter v. United States*, 547 F.2d 258, 259 (5th Cir. 1977)).[4]

---

[4] *Walker* counsel respectfully submit that the cases in the May 10, 2022 Order are distinguishable. For example, two of the cases involve counsel who filed numerous cases at the exact same time and then, after receiving judicial assignments, attempted to dismiss all but one case. *In re Fieger*, 191 F.3d 451 (6th Cir. 1999) (unpublished) (attorney filed 13 complaints in federal district court simultaneously, claimed on case cover sheet that no similar cases existed, and publicly boasted of his effort to control the assignment of a judge); *Murray v. Sevier*, 1992 WL 75212 (D. Kan. Mar. 13, 1992) (attorney filed six cases simultaneously, dismissed all but one case, and sought to add parties from dismissed cases to the one live case; court dismisses case without sanctions). Two additional cases involve dismissals after an unfavorable ruling or indication that a judge would so rule, which had not happened here. *Endo Pharms. Inc. v. Fed. Trade Comm'n*, 345 F. Supp.3d 554 (E.D. Pa. 2018) (FTC re-filed case in different jurisdiction after judge indicated he would rule against FTC on a particular issue; court discusses but does not impose sanctions); *Vaqueria Tres Monjitas, Inc. v. Rivera Cubano*, 341 F. Supp.2d 69 (D.P.R. 2004) (litigant dismissed case and refiled in different jurisdiction after its preliminary injunction denied). The remaining civil cases do not involve, as here, any analysis of dismissal under Rule 41(a)(1). *Hernandez v. City of El Monte*, 138 F.3d 393 (9th Cir. 1998) (finding that plaintiffs' filing in federal court and then re-

When the *Walker* Plaintiffs filed their stipulation of dismissal under Rule 41(a)(1)(i), Defendants had not yet filed an answer, allowing Plaintiffs to avail themselves of the right to dismiss. *Walker* Counsel understand the importance of the judicial system's impartiality, and respectfully submit that they have acted consistent with that interest and fully complied with the Federal Rules of Civil Procedure and with the Rules of Professional Conduct.

Respectfully submitted,

*/s/ Barry A. Ragsdale*
Barry A. Ragsdale

**OF COUNSEL:**

**DOMINICK FELD HYDE, P.C.**
1130 22nd Street South, Suite 4000
Birmingham, Alabama 35205
Tel.: (205) 536-8888
bragsdale@dfhlaw.com

---

filing in state court violative not of Rule 41(a)(1) but of a local district court rule; reversing sanction of dismissing case as overly harsh); *Lane v. City of Emeryville*, 56 F.3d 71 (9th Cir. 1995) (finding that litigant who filed complaint after dismissing previous complaint did so for an "improper purpose" under Rule 11, including where complaint was deemed to be frivolous and attorney misled court about reason for dismissal and re-filing); *In re BellSouth Corp.*, 334 F.3d 941 (11th Cir. 2003) (defense counsel disqualified for attempting to hire relative of judge in order to accuse judge; case did not involve voluntary dismissal); *Robinson v. Boeing Co.*, 79 F.3d 1053 (11th Cir. 1996) (affirming denial of motion for leave to add new counsel where addition would require recusal of trial judge.).

## CERTIFICATE OF SERVICE

    I hereby certify that on May 19, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will give notice of such filing to all counsel of record.

                                      */s/ Barry A. Ragsdale*
                                      OF COUNSEL