UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA

*In re* Amie Adelia Vague *et al.*          Case No. 2:22-mc-03977-WKW

## MOTION FOR PROTECTIVE ORDER

*Ladinsky* Counsel[1] move the Panel to enter a protective order recognizing the attorney-client, and other privileges which exist, as well as the right of attorneys to invoke and protect such privileges. Attached as Exhibit A is a declaration of Melody H. Eagan in support of this motion. Attached as Exhibit B is a declaration of Asaf Orr in support of this motion.

### Introduction

The Panel's Order of July 8, 2022, requires *Ladinsky* Counsel to disclose information that is protected by attorney-client privilege, the work-product doctrine, and/or the common-interest doctrine. *Ladinsky* Counsel object to disclosing

---

[1] Jeffrey P. Doss, Melody H. Eagan, and Amie A. Vague; Brent P. Ray, Michael B. Shortnacy, and Abigail Hoverman Terry; and Shannon Minter, Asaf Orr, Jennifer L. Levi, Sarah Warbelow, Cynthia Weaver, Scott D. McCoy, and Diego Armando Soto (hereinafter referred to collectively as "*Ladinsky* Counsel").

privileged information, including communications exchanged among attorneys or clients.

For purposes of this motion, *Ladinsky* Counsel will categorize the information sought into two groups. The first group ("Group One") generally seeks information related to the decision to dismiss the *Ladinsky* matter and file the *Eknes-Tucker* matter. The contents of the specific communications among the attorneys and clients related to those decisions are privileged, and *Ladinsky* Counsel object to disclosing them.

The second group ("Group Two") asks *Ladinsky* Counsel to disclose what they did to prepare for the May 20, 2022 hearing. *See* [Doc. 22 at 5 (No. 7)]. When the Panel issued its May 10, 2022 Order [Doc. 1], raising concerns of improper lawyer conduct and potential "abuses [of] the judicial process," *Ladinsky* Counsel sought legal advice with their respective counsel to prepare for the May 20, 2022 hearing. These communications remain protected by the attorney-client privilege, work-product, and the common interest privilege. *Ladinsky* Counsel object to disclosing this privileged information (even for an *in camera* review) to the very panel that is deciding whether to "initiate formal charges" against them. *See* [Doc. 22 at 5].

The requests for information in the July 8, 2022 Order [Doc. 22] implicate multiple privileges, and those privileges remain intact, without exception or waiver.

## Argument

**I.     The rules of privilege apply to this proceeding.**

The Panel states it is conducting this inquiry pursuant to its "inherent authority to address lawyer conduct that abuses the judicial process," [Doc. 1 at 5], but that does not mean the privilege rules are inapplicable. To the contrary, "*[t]he rules on privilege apply to all stages of a case or proceeding*" even when the other rules of evidence do not apply to that case or proceeding. *See* Fed. R. Evid. 1101(c) (emphasis added).

For example, a judge is not bound by the rules of evidence when making a preliminary decision under Rule 104(a), "*except those on privilege*." Fed. R. Evid. 104(a) (emphasis added); Fed. R. Evid. 1101(d)(1). The rules of evidence generally do not apply to grand jury proceedings (Fed. R. Evid. 1101(d)(2)), but the privilege rules—including work product—do apply. *See, e.g.*, *In re Grand Jury Investigation*, 412 F. Supp. 943, 946–47 & n.3A (E.D. Pa. 1976). In fact, Rule 1101(d), which identifies the short list of proceedings in which the rules of evidence do not apply, explicitly states that the privilege rules still apply in those proceedings. Fed. R. Evid. 1101(d) ("These rules—*except for those on privilege*—do not apply to the following . . . .").

The Federal Rules of Evidence apply to this proceeding, as it is a "proceeding[] before [] United States District Courts." Fed. R. Evid. 1101(a). But

even if this qualifies as a "miscellaneous proceeding" or some other proceeding where the rules generally do not apply, the privilege rules still apply just like they do in any other proceeding in federal court. *See also*, Northern District of Alabama Local Rule 83.1(h)(1)(C) (recognizing that privileges may be asserted in stages of an attorney disciplinary proceeding); Middle District of Alabama Local Rule 83.1(j)(3) (same).

Because the privilege rules apply to this proceeding, the clients in the *Ladinsky* and *Eknes-Tucker* matters continue to enjoy all applicable privileges, and *Ladinsky* Counsel once again expressly assert them here. In addition, the Panel's Order of July 8, 2022 confirmed that "[n]othing in this Order shall be construed in any way to limit the right of any attorney subject to this proceeding to have counsel present in the proceeding." [Doc. 22 at 1]. Just like any client who seeks legal advice, *Ladinsky* Counsel who are subject to this proceeding are entitled to the protection of all applicable privileges. These privileges remain intact, and *Ladinsky* Counsel seek a protective order for all privileged information.

While the Panel has directed that the required declarations be submitted *in camera*, that is not sufficient protection given the nature of this proceeding. In a typical *in camera* review scenario, the trial judge is a neutral referee who decides whether documents that are arguably privileged are discoverable by a litigation opponent.

4

Here, by contrast, the Panel is not playing the role of referee. This inquiry arises from the Order entered by Judge Burke on April 18, 2022, which he directed to be served upon the Chief Judges, and the Panel was compiled to inquire about the issues raised in Judge Burke's Order. The Panel is now performing the inquiry, and the Panel will decide whether to "initiate formal charges." This makes the Panel both the investigator and the decision maker, and *Ladinsky* Counsel object to disclosing the content of their privileged communications under these circumstances even for an *in camera* review.

## II.     All confidential communications sought by the Panel are protected by the attorney-client privilege.

Any confidential communications by and among *Ladinsky* Counsel and their clients pertaining to the *Ladinsky* and *Eknes-Tucker* matters are protected by the attorney-client privilege. *See generally*, Exs. A, B. In addition, any confidential communications *Ladinsky* Counsel had with attorneys from whom they sought legal advice when faced with purported "judge shopping" allegations also are privileged. *Id*. No exception applies, and no waiver has occurred. While *Ladinsky* Counsel will explain the factors that went into the dismissal of the *Ladinsky* matter and the filing of the *Eknes-Tucker* matter, any confidential communications should remain protected.

"The [attorney-client] privilege protects 'disclosures made by a client to his attorney, in confidence, for the purpose of securing legal advice or

assistance.'" *Meyer v. Gwinnett Cnty. Police Dep't*, No. 21-12851, 2022 WL 2439590, at *7 (11th Cir. July 5, 2022) (citations omitted). The privilege similarly protects advice from the attorney to his client. *See Upjohn v. United States*, 449 U.S. 383, 390 (1981) (citations omitted) ("the privilege exists to protect … the giving of professional advice…."). The privilege also protects confidential communications made among the attorneys working together on a matter. *See Hope for Fams. & Cmty. Serv., Inc. v. Warren*, No. 3:06–CV-1113-WKW, 2009 WL 1066525, at *7–8 (M.D. Ala. April 21, 2009) (quoting *United States v. BDO Seidman, LLP*, 492 F.3d 806, 815 (7th Cir. 2007)) (describing reach of common-interest doctrine). The importance of the attorney-client privilege has long been recognized:

> Based on the theory that "sound legal advice or advocacy . . . depends upon the lawyer's being fully informed by the client," the privilege is designed "to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice."

*Cox v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1386, 1414 (11th Cir. 1994), *opinion modified on reh'g*, 30 F.3d 1347 (11th Cir. 1994) (quoting *Upjohn*, 449 U.S. at 389).

Obviously, *Ladinsky* Counsel have had strategic confidential communications about the *Ladinsky* and *Eknes-Tucker* matters among one another and with their clients. These communications are protected by the attorney-client privilege, no exception applies, and *Ladinsky* Counsel have an ethical obligation to their clients

6

to maintain confidentiality and to invoke the privilege. *See* Ala. R. Prof. Conduct. 1.6.

The Panel's July 8, 2022, Order requires attorney declarations on eight topics, most or all of which potentially invade the attorney-client privilege. For example, Topic Three orders *Ladinsky* Counsel to disclose their "participation in and knowledge of . . . [a]ny action or decision that relates to which parties to name in *Ladinsky*, *Walker*, and/or *Eknes-Tucker*, where to file each action, and all the reasons related to any such decision about who to name and where to file." [Doc. 22 at. 2] (No. 1).

Furthermore, upon receiving the May 10 Order and notice of the May 20 hearing, *Ladinsky* Counsel sought legal advice in preparation for the hearing—as is typical for anyone accused of potential wrongdoing. Because these communications were confidential and legal advice was sought, they fall squarely within the cloak of the attorney-client privilege. Yet, Topic Seven of the Panel's July 8, 2022 Order seeks these very communications. [Doc. 22at 3] (No. 7). *Ladinsky* Counsel object to disclosing any such communications to anyone, especially to the very Panel which says it may "initiate formal charges."

7

### III.  **The attorney-client privilege has not been waived.**

The clients in the *Ladinsky* or *Eknes-Tucker* matters have done nothing to waive the attorney-client privilege. It is their privilege to assert, and they have not waived it.  The privilege remains intact.

Similarly, *Ladinsky* Counsel have done nothing to waive the privilege that is attached to any confidential communications in which they sought legal advice to defend themselves against the "judge shopping" allegations. *Ladinsky* Counsel have not voluntarily chosen to disclose any portions of privileged communications. They have denied wrongdoing, and they insist that all confidential communications with their counsel remain privileged.

### IV.  **The work-product doctrine protects the information the Panel has requested, and the privilege has not been waived.**

In addition to the protections of the attorney-client privilege, the work-product doctrine also applies to the communications and advice at issue. *See generally*, Exs. A, B. Litigation is the basis for this entire discussion—the underlying lawsuits and the Panel's investigative hearings. Thus, materials created by any legal counsel in anticipation of litigation in Group One or in Group Two deserve to remain confidential and undisclosed. Any notes or documents the attorneys created in conjunction with the underlying litigation and the Panel's judge shopping inquiry are subject to protections of the work-product doctrine. The materials were prepared with the assistance of counsel and used in anticipation of litigation (*i.e.*, the

underlying lawsuits, the May 20 hearing, and in preparation for the declarations and August 3 and 4 hearing). Thus, these preparatory materials are subject to work-product protection, and *Ladinsky* Counsel ask the Panel to protect them from disclosure.

The work-product doctrine is primarily codified in Federal Rule of Civil Procedure 26(b)(3). *See Cox*, 17 F.3d at 1421. The rule states:

> (3) *Trial Preparation: Materials.*
>
>> (A) *Documents and Tangible Things.* Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent). But, subject to Rule 26(b)(4), those materials may be discovered if:
>>
>>> (i) they are otherwise discoverable under Rule 26(b)(1); and
>>>
>>> (ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.
>>
>> (B) *Protection Against Disclosure.* If the court orders discovery of those materials, it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation.

Fed. R. Civ. P. 26(b)(3). The Panel's July 8, 2022 Order primarily seeks opinion work product, such as the mental impressions described in Rule 26(b)(3)(B), which

cannot be discovered easily, and are discoverable only under the rarest circumstances. *See Cox*, 17 F.3d at 1422 (citations omitted).

Here, any materials that were created in preparation of the underlying cases and to defend the judge shopping allegations are not only work product, but they are sacrosanct opinion work product. As any competent and diligent lawyer would do, *Ladinsky* Counsel and their respective counsel devised strategy for the underlying litigation and to defend the judge shopping allegations. Anything that reflects the attorneys' mental impressions is privileged attorney work product and should not be disclosed.

Finally, *Ladinsky* Counsel have done nothing to waive the work-product doctrine. Although the Panel has not suggested that there has been any waiver of work-product privilege, and *Ladinsky* Counsel deny that there has been, even if there were a subject-matter waiver regarding the attorney-client privilege (which would be incorrect), such waiver would not extend to opinion work product:

> The subject-matter waiver doctrine provides that a party who injects into the case an issue that in fairness requires an examination of communications otherwise protected by the attorney-client privilege loses that privilege. *GAB Business Services, Inc. v. Syndicate 627*, 809 F.2d 755, 762 (11th Cir. 1987). However, as the Fourth Circuit has observed in *In re Martin Marietta Corp.*, 856 F.2d 619, 625–26 (4th Cir. 1988), cert. denied, 490 U.S. 1011, 109 S. Ct. 1655, 104 L.Ed.2d 169 (1989), the subject-matter waiver doctrine does not extend to materials protected by the opinion work product privilege.

*Cox*, 17 F.3d at 1422. In sum, the information sought is protected by the work product doctrine, which has not been waived.

V.  **The information the Panel seeks is also protected by the common-interest doctrine.**

To the extent any communications or work product was shared among certain *Ladinsky* Counsel or their counsel with other attorney-parties or counsel for other attorney-parties, those communications and materials were in furtherance of shared goals and common interests. As for the underlying litigation, they share the common interest of challenging the constitutionality of Alabama's Vulnerable Child Compassion and Protection Act. As for this inquiry, they share the common interest in defending against the judge shopping allegations and in establishing the legitimacy of all filing and dismissal decisions in the underlying litigation. Because of these shared interests, any information exchanged with the exercise of professional judgment between and among counsel for the parties remains protected.

"'The common interest doctrine permits parties whose legal interests coincide to share privileged materials with one another in order to more effectively prosecute or defend their claims.'" *Cooper v. Old River Supply, Inc.*, No. 3:10-cv-01495-JEO, 2012 WL 13027261, at *2 (N.D. Ala. May 18, 2012) (quoting *Hunton & Williams v. U.S. Dep't of Justice*, 590 F.3d 272, 277 (4th Cir. 2010)). "[A]lthough occasionally termed a privilege itself, the common interest doctrine is really an exception to the rule that no privilege attaches to communications between a client

and an attorney in the presence of a third person." *Hope for Fams. & Cmty. Serv., Inc.*, 2009 WL 1066525 at *7 (quoting *BDO Seidman, LLP*, 492 F.3d at 815). As the Middle District of Alabama has explained:

> Applying the common interest doctrine to the full range of communications otherwise protected by the attorney-client privilege encourages parties with a shared legal interest to seek legal assistance in order to meet legal requirements and to plan their conduct accordingly. This planning serves the public interest by advancing compliance with the law, facilitating the administration of justice and averting litigation.

*Id.* at *8. The common interest doctrine also protects attorney work-product. Thus, "attorneys facing a common litigation opponent may exchange privileged communications and attorney work product in order to prepare a common defense without waiving either privilege." *Schachar v. Am. Acad. of Ophthalmology, Inc.,* 106 F.R.D. 187, 191 (N.D. Ill. 1985); *see also BASF Aktiengesellschaft v. Reilly Indus., Inc.,* 224 F.R.D. 438, 442 (S.D. Ind. 2004) ("[W]aiver would not occur if disclosure of otherwise protected work product was made to a third party with a common legal interest or would not otherwise substantially increase the ability of an adversary to gain the information.").

Here, to the extent any of the *Ladinsky* Counsel or their counsel shared with, exchanged with, or received from any other attorney-parties or their counsel any communications in preparation for underlying litigation or to defend the judge shopping allegations, the common-interest doctrine protects those exchanges.

## **Conclusion**

Some of the information and materials sought are subject to the sanctity of privileges long recognized and respected by the courts. Accordingly, *Ladinsky* Counsel ask this Panel to enter a protective order that allows them not to disclose privileged communications or work product in either their declarations or in any testimony they might later give.

                                            */s/ Samuel H. Franklin*
                                            One of the Attorneys for
                                            Melody H. Eagan, Jeffrey P. Doss, and
                                            Amie Adelia Vague

OF COUNSEL:
Samuel H. Franklin
*sfranklin@lightfootlaw.com*
M. Christian King
*cking@lightfootlaw.com*
LIGHTFOOT, FRANKLIN & WHITE, LLC
The Clark Building
400 20th Street North
Birmingham, Alabama 35203
(205) 581-0700
(205) 581-0799 (Facsimile)

                                            */s/ Jennifer H. Wheeler*
                                            Bruce F. Rogers
                                            Jennifer Hanson Wheeler
                                            BAINBRIDGE, MIMS, ROGERS & SMITH, LLP
                                            The Luckie Building
                                            600 Luckie Drive, Suite 415
                                            Birmingham, Alabama 35223
                                            Telephone:  (205) 879-1100
                                            Facsimile:   (205) 879-4300
                                            Email: brogers@bainbridgemims.com
                                                        jwheeler@bainbridgemims.com

*Counsel for Brent P. Ray, Michael B. Shortnacy, and Abigail Hoverman Terry*

/s/ Robert D. Segall
Robert D. Segall
COPELAND, FRANCO, SCREWS & GILL, P.A.
444 South Perry Street
Post Office Box 347
Montgomery, Alabama 36101-0347
Phone: (334) 834-1180
Fax: (334) 834-3172
Email: segall@copelandfranco.com

*Counsel for Shannon Minter, Asaf Orr, Jennifer L. Levi, Sarah Warbelow, Cynthia Weaver, Scott D. McCoy, and Diego Armando Soto*

## **CERTIFICATE OF SERVICE**

I certify that on July 19, 2022, I filed the foregoing electronically with the Clerk of Court using the CM/ECF system, which will automatically serve all counsel of record.

*/s/ Jennifer H. Wheeler*
Of Counsel