**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**

**UNTIED STATES DISTRICT COURT FOR THE**
**NORTHERN DISTRICT OF ALABAMA**

**UNITED STATES DISTRICT COURT**
**FOR THE SOURTHERN DISTRICT OF ALABAMA**

*In re* **Amie Adelia Vague, et al.**　　　)
　　　　　　　　　　　　　　　　　　)　　**Case No. 2:22-mc-03977-WKW**
　　　　　　　　　　　　　　　　　　)

**DECLARATION OF MELODY H. EAGAN**

1.　　My name is Melody H. Eagan. I am over twenty-one (21) years of age, under no disability, and competent to testify to the matters contained in this declaration based upon personal knowledge.  I submit this Declaration in response to this Panel's July 8, 2022 Order.

2.　　I am a partner in the law firm Lightfoot, Franklin & White, LLC ("Lightfoot").  I received my Juris Doctorate from Vanderbilt University Law School in 1994 and thereafter began practicing as an attorney with Lightfoot, where I have spent my entire legal career.  I am licensed to practice and in good standing with the state courts in Alabama, Mississippi, and Tennessee; the United States District Courts for the Northern, Middle, and Southern Districts of Alabama; the United States District Courts for the Northern and Southern Districts of

Mississippi; and the Eleventh Circuit Court of Appeals. I have never been the subject of any court or bar disciplinary proceedings.

3.      I represented the plaintiffs in the case styled *Ladinsky v. Ivey*, No. 5:22-cv-00447-LCB (N.D. Ala.) ("*Ladinsky*"). In April of 2020, I was contacted by Michael Shortnacy and Brent Ray from King & Spalding, LLP ("King & Spalding") about the potential of filing a constitutional challenge to the Vulnerable Child Compassion and Protection Act ("the Act'), a bill that was pending in the Alabama Legislature. Lightfoot was retained in 2020 as pro bono legal counsel by some medical providers, including Morissa Ladinsky, M.D., and families with transgender children who received medical treatments banned by the Act.  When the Act was enacted into law two years later, on April 8, 2022, the *Ladinsky* case was filed.  A copy of the *Ladinsky* docket is attached as Exhibit A.

4.      I also am counsel representing the plaintiffs in the pending case styled *Eknes-Tucker v. Marshall*, No. 2:22-cv-00184-LCB (M.D. Ala.) ("*Eknes-Tucker*").

5.      In both *Ladinsky* and *Eknes-Tucker,* I have worked with Jeffrey P. Doss and Amie Adelia Vague from Lightfoot (collectively "the Lightfoot Lawyers"), as well as lawyers from the firm of King & Spalding, LLP ("King & Spalding"), the National Center for Lesbian Rights ("NCLR"), GLBTQ Legal Advocates and Defenders ("GLAD"), the Southern Poverty Law Center ("the SPLC"), and the Human Rights Campaign Foundation ("the HRCF").  The lawyers

with whom I recall working on *Ladinsky* and *Eknes-Tucker* from these non-Lightfoot entities are parties to this proceeding and Shannon Minter from NCLR (collectively, "Associated Counsel").

6.      On April 7, 2022, the Alabama Legislature passed the Act, and on April 8, 2022, Governor Kay Ivey signed the Act into law.  *Ladinsky* was filed after courthouse hours on April 8, 2022, in the United States District Court for the Northern District of Alabama.  The complaint was filed as soon as possible after the law was signed by Governor Ivey, as my co-counsel and I wanted to ensure that *Ladinsky* would be the first-filed action challenging the Act.  I understood, based upon communications with Associated Counsel, that the ACLU planned to file a lawsuit challenging the Act, and we wanted to make sure we filed *Ladinsky* first, where *Ladinsky* would be the lead lawsuit.

7.      The plaintiffs in *Ladinsky* were two doctors from University of Alabama in Birmingham ("UAB") and two parents who filed claims individually and on behalf of their children (using pseudonyms to protect their identities) who wished to challenge the Act and had standing to assert the Counts in the *Ladinsky* Complaint.  *Ladinsky* was filed in the United States District Court for the Northern District of Alabama, Southern Division, where most of the plaintiffs resided.  I also found it desirable to file *Ladinsky* in the Northern District, Southern Division because the courthouse where proceedings would be held is close to Lightfoot's

office, eliminating a need to travel in a pro bono matter.  Moreover, I was generally familiar with the judges who would likely draw the case in the Northern District, Southern Division, and believed that they would likely be fair draws for what would likely be a highly political, sensitive case.

8.      The defendants named in their official capacity in *Ladinsky* were those individuals who we identified as having potential enforcement authority over the Act as to the named plaintiffs: Attorney General Steve Marshall, Governor Kay Ivey, and the District Attorneys in the counties where the plaintiffs resided.

9.      When we filed *Ladinsky* in the Northern District, Southern Division, I understood that the case would be randomly assigned to any Article III or Magistrate Judge in the Northern District.  The case was initially assigned through the random selection process to Judge Manasco, who then recused herself on April 11, 2022.  The case was then randomly assigned to Magistrate Judge Cornelius and, thereafter, randomly assigned to Judge Axon on April 14, 2022, after the Defendants did not consent to the dispositive jurisdiction by a magistrate judge.  I, the Lightfoot Lawyers, and Associated Counsel did nothing to try to manipulate or influence any of those judicial assignments.

10.     Late in the afternoon on April 11, 2022, I learned from Scott McCoy, one of the Associated Counsel, that the *Walker v. Marshall* case, No. 2:22CV167-ECM (M.D. Ala.) ("*Walker*") had been filed in the Middle District of Alabama.  I

also learned at that time that the *Walker* plaintiffs filed that action as "related to" *Corbitt v. Taylor*, Case No. 2:18cv91-MHT (M.D. Ala).   A copy of the *Walker* docket (after the case was transferred to the Northern District) is attached as Exhibit B.  I am not associated with any of the legal counsel representing the plaintiffs in *Walker*, and none of the legal counsel in *Walker* has represented any of the plaintiffs in either *Ladinsky* or *Eknes-Tucker*.  To my knowledge, no counsel from *Walker* have been associated in either *Ladinsky* or *Eknes-Tucker*.

11.   On April 13, 2022, I learned from Jeffrey Doss, one of the Lightfoot Lawyers, that Chief Judge Marks had entered an order in the *Walker* case, directing the parties to show cause why the *Walker* case should not be transferred to the Northern District of Alabama, to be decided with *Ladinsky*, the first-filed action.  I understand that later that day, one of the counsel from *Walker* contacted Asaf Orr, one of the Associated Counsel, and requested a call with *Ladinsky* counsel regarding how *Walker* counsel planned to respond to Chief Judge Marks' Order.  I attended a call with some of the *Walker* counsel scheduled for 5:00 p.m. on April 13, although I was about 10 minutes late to the call.  I do not recall who attended the call, other than I remember Asaf Orr from NCLR and James Esseks from the ACLU being on the call.  This call was the first time I communicated with any lawyer representing the *Walker* plaintiffs.  I had the impression after the call that the *Walker* counsel desired to stay in the Middle District and *Ladinsky* counsel

intended to proceed in the Northern District.  Counsel for *Ladinsky* continued to work on a motion for preliminary injunction and the related evidentiary submission, with the goal of filing the motion by first part of the following week if not sooner.

12.     On the morning of April 15, 2022, I learned that the *Walker* case was being transferred to the Northern District of Alabama.  I also learned from Abigail Terry, an associate attorney with King & Spalding, that she had a conversation with Judge Axon's "CRD" (I assume she meant courtroom deputy) that morning relating to the pro hac vice motions to be filed.  Ms. Terry reported that during the call, the CRD told her that the *Walker* case was being assigned to Judge Axon.  I also learned around that time from Asaf Orr, one of our Associated Counsel, that the *Walker* case had been assigned to Judge Liles Burke.

13.     At or around 3:17 p.m. on April 15, I received an email and draft motion to consolidate from Carl Charles, one of the counsel for *Walker*, for review and filing in *Ladinsky*, consistent with the established practice in the Northern District of Alabama that a motion to consolidate shall be filed in the first-filed action and any later-filed consolidated cases are assigned to the judge presiding over the first-filed action.  Also copied on that email were Kathleen Hartnett, Jennifer Levi, Jeffrey Doss, Li Nowli-Sohl, Asaf Orr, and Shannon Minter.  I believe that was my first communication with any counsel for *Walker* on April 15.

After seeing the email at some time after 3:17 p.m., I began my review and editing of the motion.

14.     At or around 4:00 p.m., I called and spoke with Edmund LaCour, one of the lawyers for the *Ladinsky* defendants, to see if his clients would consent to the transfer and consolidation of *Walker* with *Ladinsky* before Judge Axon.  In that call, Mr. LaCour informed me that his office had already prepared a motion to consolidate the two cases, to be filed in the *Ladinsky* action, and we agreed that the process in the Northern District dictated that the cases would be assigned to Judge Axon, who was assigned the first-filed case.  Mr. LaCour told me that defendants planned to file the motion on the afternoon of April 15, and we agreed that since they had prepared a motion, defense counsel would file the motion and state that the *Ladinsky* Plaintiffs consented to the motion.

15.     At or around 4:07 p.m., while I believe I was on the phone with Mr. LaCour discussing our agreement that the *Walker* case should be transferred to Judge Axon, Judge Burke entered a text order scheduling an in-person status conference for 10:00 a.m. in *Walker* on Monday, April 18.  I learned about that order after speaking with Mr. LaCour.  At or around 4:13 p.m., immediately following my call with Mr. LaCour, I sent an email to the email group outlined in Paragraph 13, reporting on the call.  At 4:20 p.m., I sent an email to Mr. LaCour, clarifying that I had communicated with counsel for the *Walker* plaintiffs and that

they also consented to consolidation.  At 4:33 p.m., Mr. LaCour emailed me back, confirming that he would file the motion to consolidate in *Ladinsky*, per our previous discussion, and note that both *Ladinsky* and *Walker* plaintiffs consented.

16.     Nine minutes later, at 4:42 p.m., much to my surprise, Judge Axon entered a text order transferring the *Ladinsky* case to Judge Burke "in the interest of efficiency and judicial economy".  I did not understand why or how *Ladinsky* had been transferred to Judge Burke, contrary to the established process in the Northern District relating to first-filed cases and consolidation of related matters— procedures I assumed were intended to protect the random assignment of cases.  I was concerned, as the *Ladinsky* matter was transferred to the judge with the second-filed case (which was pending in the Northeastern Division/Huntsville), without any notice, explanation, or opportunity for the parties to respond.  Moreover, I was also concerned that *Ladinsky*, the first-filed case, was potentially losing its position as the lead case to *Walker.*

17.     At 4:50 p.m., I received an email from Barrett Bowdre, one of the counsel for the *Ladinsky* defendants, stating, "In light of Judge Axon's order, we do not intend to file the motion to consolidate."

18.     At or around 5:00 p.m., I had a call with some of the Associated Counsel to discuss Judge Axon's order and next steps in *Ladinsky*.  I do not recall everyone who was on the call, but I believe Jeff Doss, Shannon Minter, Asaf Orr,

and Michael Shortnancy were on the call.  There were others, but I do not recall

who.  It was late on Good Friday, and we could not identify any acceptable means

to determine how or why *Ladinsky* was transferred to Judge Burke.  I believed that

any motion to reconsider would likely be heard by Judge Burke and not well

received, as it could be interpreted as a message that we preferred Judge Axon over

Judge Burke.  Moreover, I believed that any probing of the court about why the

established procedure was not followed could create a procedural sideshow that

would slow down our challenge of the Act, scheduled to go into effect on May 8,

and potentially backfire on our clients.  During the call, my co-counsel and I

decided that considering the inexplicable chain of events and the predicament we

were facing, the best solution would be to exercise our unconditional right to

dismiss *Ladinsky* under Fed. R. Civ. P. 41(a)(1)(A)(i) with consent of our clients,

provided that the *Walker* plaintiffs would also dismiss their case so we would not

become a second filed case on refiling.  We could then file another lawsuit to

regain our position as the lead case, potentially with *Walker* counsel as co-counsel

to prevent having two lawsuits.

      19.    At 5:49 p.m., I learned from my co-counsel Shannon Minter from

NCLR that *Walker* counsel planned to dismiss their case under Rule 41.  I wanted

the dismissal of *Walker* to be filed first, to eliminate any risk that *Walker* became

the first-filed case and then was not dismissed.  I also did not want the *Ladinsky*

defendants to file an answer on Friday night after receiving notice of the *Walker*

dismissal, thus preventing our right to a Rule 41 dismissal. Accordingly, I

coordinated the filing of the notices of dismissal with *Walker* counsel, where

*Walker* would be filed first and the *Ladinsky* dismissal would be filed within

minutes after *Walker*. After Associated Counsel secured the consent of our clients

and I confirmed that the *Walker* dismissal had been filed, the *Ladinsky* notice of

voluntary dismissal under Fed. R. Civ. P. 41(a)(1)(A)(i) was electronically filed at

6:34 p.m. on April 15.

20.     On April 15 when *Ladinsky* and *Walker* were dismissed, the plan was

to file another lawsuit challenging the constitutionality of the Act as soon as

feasible, potentially with *Walker* counsel, but the details regarding a future lawsuit

– who would be the parties or the venue – were not yet decided.

21.     On April 16, I understand that there were communications between

some members of Associated Counsel and some of the counsel for the *Walker*

plaintiffs related to the potential filing of one lawsuit. My co-counsel Shannon

Minter from NCLR and Jennifer Levi from GLAD communicated with me on

April 16 about those discussions. I was not a participant to the discussions with

*Walker* counsel, nor do I know who participated in those communications. I

understand that from those communications, the decision was made that pursuing a

lawsuit with *Walker* counsel would not be feasible or in the best interest of our

clients. The decision was made on April 16 to proceed forward with a new lawsuit without *Walker* counsel and file as soon as possible, as we desired to, once again, be the first-filed, lead action.

22.     On the evening of Saturday, April 16, Paul Gattis from AL.com contacted me by email asking whether there were plans to refile the lawsuit regarding the Act. When I received Mr. Gattis' email, I believed it was important for those impacted by the Act to know that despite the dismissals, my co-counsel and I still planned to pursue a lawsuit to block enforcement of the Act, particularly considering public statements that had been made by Attorney General Steve Marshall regarding the dismissals. Therefore, at 8:50 p.m., I emailed Mr. Gattis and provided him the following quote: "We do plan to refile imminently, to challenge this law that criminalizes medical treatment accepted as the standard of care in the medical profession and deprives parents of their right to choose such medical care for their children." When I used the word "refile", I was referring to counsel would be re-filing a lawsuit; at that point, a final decision had not yet been made on whether any plaintiffs in the *Ladinsky* action would be named in the new action.

23.     On Easter morning, Sunday April 17, I learned from my co-counsel that *Walker* counsel no longer planned to pursue a lawsuit challenging the Act, other than the local ACLU counsel who were interested in working with us on a

new lawsuit. On Sunday, my co-counsel and I made a final decision to file the

new lawsuit in the United States District Court for the Middle District of Alabama

with all new plaintiffs, without local ACLU counsel. I was concerned that if we

were to file in the Northern District, the case could be taken out of the random

assignment process and assigned to Judge Burke, considering the events of April

15, and all our questions about how *Ladinsky* had ended up before Judge Burke

remained unanswered. I was also concerned that if we filed a new action with the

same plaintiffs, we could be accused by the Defendants or in the press of "judge

shopping" so the cleanest path was to file a new action with new plaintiffs. When

we dismissed *Ladinsky* on April 15, we represented some individuals who were not

yet named in *Ladinsky* and are now plaintiffs in the *Eknes-Tucker* matter. I

understand that over the weekend and on Monday, April 18, Associated Counsel

identified some additional families, medical providers, and a pastor who wished to

be plaintiffs. The addition of some of these plaintiffs allowed us to raise claims

that we had not raised when we filed *Ladinsky.* Most, but not all, of these

individuals resided in the Middle District of Alabama.

24.     I am unaware of any effort to associate any lawyer or law firm for the

purpose of impacting case assignments or recusal. I had a phone call with Royal

Dumas, a partner at Rushton Stakely, in the afternoon of April 16. Mr. Dumas is a

friend of Brandon Essig, one of my law partners, and Mr. Dumas had reached out

to Mr. Essig during the week of April 11, to see if Mr. Dumas' teenage son could

provide any assistance to our team in *Ladinsky* (such as being a runner or any type

of research).  On April 14, Mr. Essig told me about Mr. Dumas and forwarded Mr.

Dumas' information to me.  I called Mr. Dumas on April 16, to talk with him about

his son's interest in helping with the case.  Mr. Dumas said that his teenage son

was upset about the law and wanted to help with our efforts to challenge the Act if

he could.  Mr. Dumas was aware of the dismissal on Friday, April 15; I told him

that we planned to file another lawsuit and were considering filing it in the Middle

District of Alabama.  I told Mr. Dumas that I was not sure whether there was

anything for his son to do at that point, but I asked whether he or his son knew of

any families impacted by the law who might wish to be part of a lawsuit.  I also

asked Mr. Dumas for any insight he could provide about the judges in the Middle

District and how they would likely view a constitutional challenge to the Act.  He

provided me with his insights.  Based upon that conversation and other research, I

was confident that the Article III judges who could be randomly assigned to the

case in the Middle District would not be predisposed to rule against our clients, and

I gained a comfort level with filing in the Middle District.

25.     During my call with Mr. Dumas on April 16, Mr. Dumas also raised

the possibility of serving as local counsel if we filed an action in the Middle

District of Alabama.  He stated that he did not know if his law partners would

consent, but he expressed an interest in being co-counsel if we pursued a Middle

District lawsuit.  I told him that we had so many lawyers on our team that I did not

know whether there would be any need or desire for additional counsel.  Although

I did not share this with Mr. Dumas, I also did not want to engage him or his law

firm as counsel, as I did not want to run any risk of Judge Huffaker, whom I

viewed as potentially a favorable draw for the plaintiffs, recusing from the case.

After the call on April 16, I had no further conversations with Mr. Dumas

regarding his interest in serving as co-counsel in the case.

26.     On April 19, 2022, the *Eknes-Tucker* lawsuit was filed on behalf of

the Reverend Paul Eknes-Tucker, four parents individually and on behalf of their

transgender children, and two medical providers in the Middle District of Alabama.

The plaintiffs were clients who we either represented when *Ladinsky* was

dismissed but were not named in the *Ladinsky* action, or clients with whom we

established attorney-client relationships between April 16-18, 2022 who wished to

challenge the Act.  As in *Ladinsky*, the defendants named in their official capacity

in *Eknes-Tucker* were those individuals who we identified as having potential

enforcement authority over the Act as to the named plaintiffs: Attorney General

Steve Marshall, Governor Kay Ivey, and the District Attorneys in the counties

where the plaintiffs resided.  In *Eknes-Tucker*, we also added new claims not

previously asserted in the *Ladinsky* Complaint, on behalf of those plaintiffs with

standing to raise challenges under the First Amendment.

27.     On the afternoon of April 20, I received notice that *Eknes-Tucker* was

docketed and assigned to Judge R. Austin Huffaker.  Within minutes of receiving

that notice, I received an order from Judge Huffaker reassigning the case to Judge

Liles Burke, who then scheduled a status conference for the morning of April 22.

While I was surprised by the reassignment by Judge Huffaker, at that point I

believed the best, most efficient course was to move forward with the case before

Judge Burke, as the Act was set to go into effect on May 8 and time for a

preliminary injunction hearing was limited.

28.     On the afternoon of April 21, 2022, I learned for the first time about

Judge Burke's April 18 order entered in the *Walker* case, No. 5:22-cv-00480, in

which Judge Burke raised accusations of judge shopping and directed service of

the order on all parties in *Walker*, as well as the Chief Judges and Clerk of Courts

for the United States District Courts for the Northern, Middle, and Southern

Districts of Alabama.  I understand that Gilbert Oladeinbo, an associate attorney at

King and Spalding, found the order on April 21 after seeing a news report stating

that Judge Burke had made accusations of judge shopping and referencing Judge

Burke's order.  Counsel for the plaintiffs in *Ladinsky* received no notice from the

Court of Judge Burke's April 18 Order, as it was not entered in *Ladinsky,* and case

monitoring by my co-counsel did not detect entry of the order, apparently because the *Walker* case number changed after transfer to the Northern District.

29.     After learning of Judge Burke's April 18 order, I offered at the April 22 status conference to address why the *Ladinsky* case was dismissed.  I wanted to explain to Judge Burke the procedural abnormalities that lead us to dismiss *Ladinsky*, in hopes that it would clear the air and address any concerns he had regarding me or my co-counsel. Judge Burke did not ask for an explanation or comment on my offer.  He also did not raise the issue at the preliminary injunction hearing on May 5-6, which ultimately resulted in his May 14 order preliminarily enjoining enforcement of the Act.

30.     I have not knowingly taken any action or made any plan that was intended to cause, actually caused, or may have impacted the random assignment or reassignment to, or the actual or potential recusal of, any judge in the Northern or Middle Districts of Alabama in either *Ladinsky* or *Eknes-Tucker.*

31.     As to Paragraph 7 of the Court's Order, to prepare for this Court's May 20, 2022 hearing, I had privileged communications, both oral and written, with my legal counsel Sam Franklin and Chris King.  I was present for privileged communications with Mr. King and/or Mr. Franklin and counsel for Associated Counsel, including Bobby Segall and M. Robert Thornton, General Counsel at King and Spalding, in which events in *Ladinsky* and *Eknes-Tucker* that could relate

to the upcoming May 20, 2022 hearing were discussed. I had limited communications with Jennifer Levi and Brent Ray relating to the engagement of legal counsel for Associated Counsel before the hearing. I reviewed the timing of certain events in *Ladinsky* and *Eknes-Tucker* and contemporaneous related privileged communications, including privileged communications with Mr. Doss, Ms. Vague, Associated Counsel, and *Walker* counsel. I also contributed to the preparation of a confidential, privileged outline of key points and potential questions that might be raised by the Panel, drafted by Jeffrey Doss at the direction of Mr. Franklin and Mr. King, our legal counsel. This document was marked attorney-client privileged, as it reflected confidential communications intended to be privileged. The document was created to help prepare Mr. Doss to speak at the May 20 hearing on behalf of the Lightfoot Lawyers and Associated Counsel, as I incorrectly thought that the May 20 hearing would likely be a forum where one lawyer would explain and answer questions on behalf of the group about the reasons *Ladinsky* was dismissed and *Eknes-Tucker* was then filed in the Middle District. I did not anticipate the May 20 hearing would be one where individual lawyers would be placed under oath, sequestered, and testify. This privileged document was shared by our legal counsel with Associated Counsel's legal counsel.

32.     As required by the Panel, I have provided my work product, meaning

my own mental operations and conclusions, that relate to the topics identified in

the July 8. 2022 Order. To the extent the Court's July 8 Order requests the content

of any communications protected by the attorney-client privilege and the common

interest privilege, I object to providing the content of these privileged

communications.

33.     I attest that I have complied with the Court's July 8, 2022 Order, as

clarified by the Court's July 25, 2022 Order, and have not shared nor discussed this

declaration or the contents of my declaration with any other attorney who is a

subject of this inquiry or in a manner that creates a substantial possibility that the

information could reach any other individual who has been asked to submit a

written declaration or who has provided or has been asked to provide oral

testimony.  I was not asked any substantive questions at the May 20, 2022 Hearing.

The only questions asked of me were procedural in nature in the preliminary in

camera session, and I understood that the Panel authorized me and the other

attendees in that preliminary session to discuss those procedural topics with their

respective teams at the hearing (e.g., relating to procedure at the hearing and the

designation of counsel into certain categories).

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

_____
Signature

July 27, 2022
_____
Execution Date

# Eagan Decl.

# Exhibit A

## *Ladinsky v. Ivey* Docket

| Date Filed | # | Docket Text |
|---|---|---|
| 04/08/2022 | 1 | COMPLAINT against Danny Carr, Kay Ivey, Jill H Lee, Steve Marshall, filed by Morissa J Ladinsky, Robert Roe, Jane Doe, Hussein D Abdul-Latif.(KEK) (Entered: 04/11/2022) |
| 04/11/2022 | | Filing Fee: Filing fee $ 402, receipt_number AALNDC-4057644 (B4601119555). related document 1 COMPLAINT against Danny Carr, Kay Ivey, Jill H Lee, Steve Marshall, filed by Morissa J Ladinsky, Robert Roe, Jane Doe, Hussein D Abdul-Latif.(KEK). (Eagan, Melody) Modified on 4/11/2022 (DNW, ). (Entered: 04/11/2022) |
| 04/11/2022 | 2 | ORDER OF RECUSAL. Judge Anna M Manasco recused. Signed by Judge Anna M Manasco on 4/11/2022. (DNW) (Entered: 04/11/2022) |
| 04/11/2022 | 3 | Case Reassigned to Magistrate Judge Staci G Cornelius. Please use case number 2:22-cv-00447-SGC on all subsequent pleadings. (DNW) (Entered: 04/11/2022) |
| 04/11/2022 | 4 | NOTICE OF CONSENT to a magistrate judge in a civil action. (AKD) (Entered: 04/11/2022) |
| 04/11/2022 | 5 | MOTION for Leave to Proceed Pseudonymously by Jane Doe, Robert Roe. (Eagan, Melody) (Entered: 04/11/2022) |
| 04/12/2022 | 6 | Summons Issued as to Danny Carr, Kay Ivey, Jill H Lee. Returned to Plaintiff for service. (AKD) (Entered: 04/12/2022) |
| 04/12/2022 | 7 | Summons Issued as to Steve Marshall. Returned to Plaintiff for service. (AKD) (Entered: 04/12/2022) |
| 04/13/2022 | 8 | NOTICE of Appearance by James W Davis on behalf of Kay Ivey, Steve Marshall (Davis, James) (Entered: 04/13/2022) |
| 04/13/2022 | 9 | NOTICE of Appearance by Alexander Barrett Bowdre on behalf of Kay Ivey, Steve Marshall (Bowdre, Alexander) (Entered: 04/13/2022) |
| 04/14/2022 | 10 | **NOTICE REGARDING CONSENT** of a magistrate judge in a civil action. (KEK) (Entered: 04/14/2022) |
| 04/14/2022 | 11 | NOTICE OF REASSIGNMENT - The parties having not unanimously consented to the dispositive jurisdiction by a Magistrate Judge, the above styled civil action has been randomly reassigned to the Honorable |

| | | Annemarie Carney Axon. Please use case number 2:22-cv-447-ACA on all subsequent pleadings. (KEK) (Entered: 04/14/2022) |
|---|---|---|
| 04/15/2022 | 12 | NOTICE of Appearance by Edmund Gerard LaCour, Jr on behalf of Kay Ivey, Steve Marshall (LaCour, Edmund) (Entered: 04/15/2022) |
| 04/15/2022 | 13 | NOTICE of Appearance by Thomas Alexander Wilson on behalf of Kay Ivey, Steve Marshall (Wilson, Thomas) (Entered: 04/15/2022) |
| 04/15/2022 | 14 | TEXT ORDER. In the interest of efficiency and judicial economy, this case is hereby transferred to Judge Liles C. Burke. Signed by Judge Annemarie Carney Axon on 4/15/2022. (RLW) (Entered: 04/15/2022) |
| 04/15/2022 | 15 | NOTICE of Voluntary Dismissal by Hussein D Abdul-Latif, Jane Doe, Morissa J Ladinsky, Robert Roe (Eagan, Melody) (Entered: 04/15/2022) |
| 04/18/2022 | 16 | Case reassigned to Judge Liles C Burke. Judge Annemarie Carney Axon no longer assigned to the case. (KEK) (Entered: 04/18/2022) |
| 04/18/2022 | 17 | TEXT ORDER: Because Plaintiffs have filed a notice of voluntary dismissal under Federal Rule of Civil Procedure 41(a)(1)(A)(i), the Court **DENIES** Plaintiffs' motion to proceed pseudonymously (Doc. 5) as **MOOT** and **DIRECTS** the Clerk of Court to close this case. Signed by Judge Liles C Burke on 4/18/2022. (AHI) (Entered: 04/18/2022) |

Eagan Decl.

Exhibit B

## *Walker v. Marshall* Docket

| Date Filed | # | Docket Text |
|---|---|---|
| 04/11/2022 | 1 | COMPLAINT for Declaratory and Injunctive Relief against Brian C.T. Jones, Steve Marshall, Jessica Ventiere (Filing fee $402.00 receipt number 4602066511.), filed by Jeffrey White, Jeffrey Walker, Christa White, H. W., Lisa Walker, C. W.. (Attachments: # 1 Civil Cover Sheet, # 2 Receipt)(am, ) [Transferred from Alabama Middle on 4/15/2022.] (Entered: 04/12/2022) |
| 04/11/2022 | 2 | Conflict Disclosure Statement by C. W., H. W., Jeffrey Walker, Lisa Walker, Christa White, Jeffrey White. (am, ) [Transferred from Alabama Middle on 4/15/2022.] (Entered: 04/12/2022) |
| 04/11/2022 | 5 | SEALED DOCUMENT - Filed Under Seal Pursuant to Local Rule 5.2. (wcl, ) [Transferred from Alabama Middle on 4/15/2022.] (Entered: 04/13/2022) |
| 04/12/2022 | 6 | MOTION for Leave to Proceed Using Initials and MOTION to File a Reference List Under Seal Pursuant to Local Rule 5.2(B)(1) by C. W., H. W., Jeffrey Walker, Lisa Walker, Christa White, Jeffrey White. (Attachments: # 1 SEALED ATTACHMENT, # 2 Text of Proposed Order)(wcl, ) [Transferred from Alabama Middle on 4/15/2022.] (Entered: 04/13/2022) |
| 04/12/2022 | 7 | BRIEF/MEMORANDUM in Support re 6 MOTION for Leave to Proceed Using Initials and MOTION to File a Reference List Under Seal Pursuant to Local Rule 5.2(B)(1) filed by C. W., H. W., Jeffrey Walker, Lisa Walker, Christa White, Jeffrey White. (wcl, ) [Transferred from Alabama Middle on 4/15/2022.] (Entered: 04/13/2022) |
| 04/12/2022 | 8 | MOTION to Reassign to Judge Myron H. Thompson as a Related Case by C. W., H. W., Jeffrey Walker, Lisa Walker, Christa White, Jeffrey White. (Attachments: # 1 Text of Proposed Order)(wcl, ) [Transferred from Alabama Middle on 4/15/2022.] (Entered: 04/13/2022) |
| 04/12/2022 | 9 | MOTION for a Temporary Restraining Order and/or MOTION for Preliminary Injunction by C. W., H. W., Jeffrey Walker, Lisa Walker, Christa White, Jeffrey White. (Attachments: # 1 Text of Proposed Order for Temporary Restraining Order, # 2 Text of Proposed Order for Preliminary Injunction)(wcl, ) [Transferred from Alabama Middle on 4/15/2022.] Modified on 4/15/2022 (KEK). (Entered: 04/13/2022) |
| 04/12/2022 | 10 | BRIEF/MEMORANDUM in Support re 9 MOTION for a Temporary Restraining Order and/or MOTION for Preliminary Injunction filed by C. W., H. W., Jeffrey Walker, Lisa Walker, Christa White, Jeffrey |

| | | |
|---|---|---|
| | | White. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9, # 10 Exhibit 10)(wcl, ) (Additional attachment(s) added on 4/14/2022 to redact personal information contained in original filing pursuant to the E-government rules: # 11 Exhibit 5 (Redacted)) (wcl, ). Modified on 4/14/2022 (wcl, ). [Transferred from Alabama Middle on 4/15/2022.] (Entered: 04/13/2022) |
| 04/13/2022 | 3 | **ORDER TO SHOW CAUSE: it is ORDERED that the parties shall show cause, if any there be, on or before 4/14/2022, why this action should not be transferred to the Northern District of Alabama, where the first-filed action is pending; The parties shall have until 4/15/2022 at noon, to file briefs in response; DIRECTING the Clerk to serve a copy of this Order on Dfts Steve Marshall, Brian C.T. Jones, and Jessica Ventiere at the mailing addresses on file with the Court; DIRECTING the Plfs to serve a copy of this Order along with their summons and complaint. Signed by Chief Judge Emily C. Marks on 4/13/2022. (copies mailed to dfts as directed) (wcl, )** [Transferred from Alabama Middle on 4/15/2022.] (Entered: 04/13/2022) |
| 04/13/2022 | 4 | Summons Issued as to Brian C.T. Jones, Steve Marshall, Jessica Ventiere and returned to counsel for personal service by process server. (wcl, ) [Transferred from Alabama Middle on 4/15/2022.] (Entered: 04/13/2022) |
| 04/14/2022 | 11 | NOTICE of Appearance by Latisha Gotell Faulks on behalf of All Plaintiffs (Faulks, Latisha) [Transferred from Alabama Middle on 4/15/2022.] (Entered: 04/14/2022) |
| 04/14/2022 | 12 | WAIVER OF SERVICE Returned Executed by Jeffrey White, Jeffrey Walker, Christa White, H. W., Lisa Walker, C. W.. Steve Marshall waiver sent on 4/13/2022, answer due 6/13/2022. (Faulks, Latisha) [Transferred from Alabama Middle on 4/15/2022.] (Entered: 04/14/2022) |
| 04/14/2022 | 13 | NOTICE of Appearance by James William Davis on behalf of All Defendants (Davis, James) [Transferred from Alabama Middle on 4/15/2022.] (Entered: 04/14/2022) |
| 04/14/2022 | 14 | NOTICE of Appearance by Alexander Barrett Bowdre on behalf of Brian C.T. Jones, Steve Marshall, Jessica Ventiere (Bowdre, Alexander) [Transferred from Alabama Middle on 4/15/2022.] (Entered: 04/14/2022) |
| 04/14/2022 | 15 | NOTICE of Appearance by Edmund Gerard LaCour, Jr on behalf of Brian C.T. Jones, Steve Marshall, Jessica Ventiere (LaCour, Edmund) |

| | | |
|---|---|---|
| | | [Transferred from Alabama Middle on 4/15/2022.] (Entered: 04/14/2022) |
| 04/14/2022 | 16 | Response to Order re 3 Order to Show Cause,, filed by Brian C.T. Jones, Steve Marshall, Jessica Ventiere. (Davis, James) [Transferred from Alabama Middle on 4/15/2022.] (Entered: 04/14/2022) |
| 04/14/2022 | 17 | RESPONSE to Motion re 8 MOTION to Reassign Case filed by Brian C.T. Jones, Steve Marshall, Jessica Ventiere. (Attachments: # 1 Exhibit Final Judgment in Corbitt v. Taylor)(LaCour, Edmund) [Transferred from Alabama Middle on 4/15/2022.] (Entered: 04/14/2022) |
| 04/14/2022 | 18 | RESPONSE TO ORDER TO SHOW CAUSE re 3 Order to Show Cause,, filed by C. W., H. W., Jeffrey Walker, Lisa Walker, Christa White, Jeffrey White. (Faulks, Latisha) [Transferred from Alabama Middle on 4/15/2022.] (Entered: 04/14/2022) |
| 04/15/2022 | 19 | NOTICE of Appearance by Thomas Alexander Wilson on behalf of Brian C.T. Jones, Steve Marshall, Jessica Ventiere (Wilson, Thomas) [Transferred from Alabama Middle on 4/15/2022.] (Entered: 04/15/2022) |
| 04/15/2022 | 20 | **ORDER: it is ORDERED as follows: 1. The 8 motion to reassign is DENIED as moot; 2. In light of the parties' responses, the parties are relieved of any additional briefing requirement in the Court's 3 Order; 3. This action, including all pending motions, shall be transferred immediately to the United States District Court for the Northern District of Alabama. Signed by Chief Judge Emily C. Marks on 4/15/2022. (am, )** [Transferred from Alabama Middle on 4/15/2022.] (Entered: 04/15/2022) |
| 04/15/2022 | | Case transferred to Northern District of Alabama; Electronically transferred via CM/ECF transfer to Clerk. (am, ) [Transferred from Alabama Middle on 4/15/2022.] (Entered: 04/15/2022) |
| 04/15/2022 | 21 | Case transferred in from District of Alabama Middle; Case Number 2:22-cv-00167. Original file certified copy of transfer order and docket sheet received. (Entered: 04/15/2022) |
| 04/15/2022 | 22 | TEXT ORDER that a Status Conference is set for Monday, 4/18/2022, at 10:00 a.m. CDT in the Federal Courthouse, Huntsville, AL before Judge Liles C Burke. The purpose of the hearing is to discuss the status of the case, not to argue the merits of the motion for injunctive relief. Signed by Judge Liles C Burke on 4/15/22. (SPT ) (Entered: 04/15/2022) |

| 04/15/2022 | 23 | NOTICE of Voluntary Dismissal by W H, C. W., Jeffrey Walker, Lisa Walker, Christa White, Jeffrey White (Faulks, LaTisha) (Entered: 04/15/2022) |
| 04/18/2022 | 24 | ORDER: The Court **DENIES AS MOOT** Plaintiffs' motion for a TRO and **DIRECTS** the Clerk of Court to close this action, as more fully set out in order. Signed by Judge Liles C Burke on 4/18/2022. (AHI) (Entered: 04/18/2022) |