UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA

***In re* Amie Adelia Vague *et al.*** **Case No. 2:22-mc-03977-WKW**

**DECLARATION OF AMIE A. VAGUE**

I, Amie A. Vague, declare under penalty of perjury as follows:

1. My name is Amie Adelia Vague, I am over the age of nineteen (19), suffer no legal disabilities, and am making this declaration of my own free will and accord. I have personal knowledge of the matters stated herein.

2. I am an associate attorney employed at Lightfoot, Franklin & White, LLC ("Lightfoot"). I attended Pepperdine University School of Law and graduated with honors in 2013. Following law school, I clerked for the Honorable Camille R. McMullen on the Tennessee Court of Criminal Appeals. I am a member of good standing of State Bar of Alabama and the State Bar of Tennessee and am admitted to practice in the following courts: Supreme Court of the United States; United States Court of Appeals for the Eleventh Circuit; United States District Court for the Northern, Middle and Southern Districts of Alabama; United States District

Court for the Western, Middle and Eastern Districts of Tennessee; Alabama Supreme Court, and Tennessee Supreme Court.

3. I am a member of good standing in all courts to which I am admitted. I have never been suspended, disbarred or otherwise disciplined in any jurisdiction; nor have I ever been the subject of a disciplinary investigation, inquiry or proceeding.

4. In September 2015, I was hired as an associate attorney at Lightfoot where I have practiced continually since that time.

5. In May 2020, Melody Eagan asked me to join a pro bono matter assisting King & Spalding, LLP and various advocacy groups in representing several physicians and families with transgender children seeking to challenge the Vulnerable Child Compassion and Protection Act ("VCAP").[1] At that time, VCAP was a bill being debated in the state legislature. When I joined the Team, I played the role of associate: I attended weekly team calls to discuss the status of VCAP in the state legislature; participated in interviews of clients and potential clients and their family members; and researched potential legal arguments to challenge the law. I did not participate in identifying potential clients or making initial contact

[1] Melody H. Eagan, Jeffrey P. Doss, and I (collectively, the "Lightfoot Lawyers") were the lawyers from Lightfoot working on this matter. The Lightfoot Lawyers worked with lawyers from King & Spalding, LLP ("King & Spalding"), the National Center for Lesbian Rights ("NCLR"); GLBTQ Legal Advocates and Defenders ("GLAD"), the Southern Poverty Law Center ("SPLC"), and the Human Rights Campaign Foundation ("HRC") (collectively and together with Lightfoot, "the Team" or "our Team").

with potential clients. I do not have knowledge of who made those decisions or how those decisions were made.

6. As the VCAP bill progressed through the legislature, our Team continued to monitor its status and began preparing the Complaint that ultimately was filed in the case styled *Ladinsky v. Ivey*, Case No. 5:22-cv-00447-LCB (N.D. Ala.) ("*Ladinsky*"). As part of this process, which spanned many months, I reviewed and edited drafts of the Complaint, preliminary injunction motion, and other supporting documents like party and expert declarations.

7. During this time, there were discussions among our Team about in which district—Northern or Middle—the case should be filed. I did not make any decisions about where the case should be filed, but I came to learn that the decision had been made to file in the Northern District of Alabama, Southern Division. I understood that the majority of our plaintiffs resided in or around Birmingham and the gender clinic operated by Dr. Ladinksy and Dr. Abdul-Latif—two of our plaintiff doctors in the *Ladinsky* matter—was located in Birmingham. In addition, Lightfoot is located in Birmingham, so the Northern District, Southern Division was a convenient location for the attorneys as well.

8. After the decision was made to file in the Northern District of Alabama, our Team discussed judge assignments that may be possible. These discussions included analyses of the judges' leanings, temperament and

experience, which, in my experience as a trial attorney, is a common and expected exercise in any case. To my knowledge, there were no discussions about seeking a particular judge or avoiding a particular judge and no discussions about actions our Team could take to impact the random case assignment procedures. In addition, to my knowledge, no one on our Team took any steps to affect the random case assignment of the *Ladinsky* matter either before or after it was filed.

9. At some point in late 2021 or early 2022, I learned that another group of plaintiffs represented by a separate law firm or law firms and advocacy groups also were planning to challenge VCAP. This group ultimately filed the Complaint in the case styled *Walker v. Marshall*, Case No. 5:22-cv-00480-LCB (N.D. Ala.) ("*Walker*"). I did not learn the names of the *Walker* plaintiffs or any of the attorneys involved until after the *Walker* case was filed. I never spoke with any person on the *Walker* team or participated in calls with the *Walker* team either before or after the *Walker* case was filed. I never represented any parties in the *Walker* matter and never worked on any pleadings, motions, or other work related to the *Walker* case.

10. In early April 2022, it became clear to our Team that VCAP likely would be passed during the April 2022 session. During the week that VCAP passed, I was in an arbitration in Florida so my participation in final discussions and preparations to file the Complaint was limited. I understood that we intended

to file the Complaint on the same day that Governor Ivey signed the bill into law. Filing first would give us time to seek an injunction before the law went into effect, and we wanted to be the "first-filed" case if other plaintiffs also challenged the law to ensure that we maintained control over the direction and focus of our case in the event that subsequently-filed cases were later consolidated with *Ladinsky*.

11. On April 7, 2022, VCAP passed in the legislature, and it was signed into law by Governor Ivey on April 8, 2022. Our Team worked hard to finalize the Complaint, and that same date, our Team filed the Complaint in *Ladinsky*. Given the hour of the filing, a case number and judge were not assigned until Monday, April 11, 2022.

12. On Monday, April 11, 2022, the case was assigned to Judge Manasco. After her assignment as judge, our Team had discussions about Judge Manasco's leanings, temperament and experience, just as I would expect in any other case. To my knowledge, there were no discussions about actions our Team could take to cause Judge Manasco to recuse or reassign the case, and no one on our Team took any actions to cause Judge Manasco to recuse or reassign the case.

13. Shortly after her assignment on April 11, 2022, Judge Manasco *sua sponte* recused, and the case was reassigned to Magistrate Judge Cornelius. Again, after Judge Cornelius's assignment, our Team had discussions about her leanings,

temperament and experience. We also discussed whether we should consent to her jurisdiction pursuant to the Consent Order (Doc. 4) entered. I do not recall whether we formally filed a consent to Judge Cornelius's jurisdiction, but our Team decided to consent to her jurisdiction. However, on April 14, 2022, we received a notice of reassignment after one of the Defendants declined to consent to her jurisdiction (Doc. 11). To my knowledge, there were no discussions about actions our Team could take to cause Judge Cornelius to recuse or reassign the case, and no one on our Team took any actions to cause Judge Cornelius to recuse or reassign the case.

14. After one of the Defendants declined consent, the case was reassigned to Judge Axon on April 14, 2022. Like we had done with Judge Manasco and Judge Cornelius, our Team had discussions about Judge Axon's leanings, temperament and experience. Again, to my knowledge, there were no discussions about actions our Team could take to cause Judge Axon to recuse or reassign the case, and no one on our Team took any actions to cause Judge Axon to recuse or reassign the case.

15. After filing the Complaint on April 8, 2022, there was still significant work to be done on the preliminary injunction motion and supporting documentation. Our Team worked hard throughout the weekend and into the next week to complete those papers, with the goal of filing them early the week of April

18, 2022. We also were working on an amended complaint to add additional parties and claims, which we planned to file early the week of April 18, 2022, shortly before filing our preliminary injunction motion.

16. During the week of April 11, 2022, we also had communications with counsel for the Office of the Attorney General, who had appeared in the case although no defendant had been served, about effecting service on the defendants. However, we understood that if we filed an amended complaint, we would have to serve the defendants a second time, so we decided to hold service until we filed the amended complaint.

17. During the week of April 11, 2022, I was generally aware that the *Walker* case had been filed, that it had been assigned to Judge Marks, and that the *Walker* plaintiffs had filed a motion to reassign the case to Judge Thompson under the related-case doctrine. I was not involved in any communications with anyone on the *Walker* team about their decision to file a motion to reassign, nor am I aware of anyone on our Team having such discussions.

18. On April 13, 2022, I learned from an email circulated by Jeff Doss to our Team that Judge Marks had entered a Show Cause Order as to why the *Walker* case should not be transferred to the Northern District of Alabama where *Ladinsky*—which Judge Marks noted was the "first-filed" case—was pending. I understood that there were communications with the *Walker* team after this order

was entered, but I was not involved in those communications and have no personal knowledge of what was discussed. As an associate working on the matter, my focus at that time was finalizing our amended complaint and preliminary injunction motion and supporting papers.

19. On April 14, 2022, I saw a copy the *Walker* team's filed response to Judge Marks's Show Cause Order, in which the *Walker* team indicated that it did not oppose transfer to the Northern District of Alabama. My receipt of a copy of this document was the first I learned that the *Walker* team decided not to oppose transfer to the Northern District. I discussed the order with Jeff Doss and Melody Eagan. I believed this transfer would not have any major impact on our case as we were squarely the "first-filed" case and, thus, if the cases were consolidated as Judge Marks's order seemed to suggest, such consolidation would happen in our case. This was important to us because, as noted above, we wanted to maintain control over the direction and focus of *Ladinsky* and felt that we would be in the best position to do so if we remained the lead case.

20. On the morning of April 15, 2022, I learned from an email circulated by a member of our Team that the *Walker* case had been transferred to the Northern District, Northeastern Division and assigned to Judge Burke. Later that day, I learned *via* email from a member of our Team that the *Walker* team had spoken to someone in Judge Burke's chambers who told them that if the parties

wished to consolidate *Walker* and *Ladinsky*, a motion to consolidate would need to be filed in the "first-filed" case (i.e., *Ladinsky*). In a subsequent email to our Team, Jeff Doss confirmed that the procedure in the Northern District would require a motion to consolidate to be filed in the *Ladinsky* matter as the "first-filed" case, with the consolidated cases to be assigned to the judge assigned to the "first-filed" case. Absent some other motion by the parties in *Ladinsky* or a recusal by Judge Axon, I was not aware of any procedure by which *Ladinsky* could be transferred or reassigned to another judge. I am aware that some members of our Team had discussions with both the *Walker* team and counsel for the Defendants about consolidating the two cases in front of Judge Axon as the judge presiding over the first-filed action (*Ladinsky*), but I was not involved in any of those discussions.

21. At 4:41 p.m. on April 15, 2022, I received electronic notification of a text order reassigning the *Ladinsky* matter to Judge Burke "[i]n the interest of efficiency and judicial economy." *See* Doc. 14. Prior to this text order, our Team received no notice to my knowledge that Judge Axon was considering reassigning or transferring the case, nor were we given the opportunity to weigh in on the decision either orally or in writing. The timing of Judge Axon's Order at the very end of the business day on a Friday before a holiday weekend further complicated matters, as there was effectively no way to get any information about why the

transfer had occurred or the effect of that transfer. For example, although Judge Axon's order transferred *Ladinsky* to Judge Burke, it was unclear whether this transfer order was intended to consolidate *Ladinsky* with *Walker* or if Judge Axon even had the authority to do so absent a motion by the parties. In short, the lack of clarity about the effect of Judge Axon's order late on a Friday before a holiday weekend was not only confusing and concerning to our Team, but it caused practical problems about how we were to proceed.

22. Shortly after entry of this text order, our Team convened a call with those who were available to discuss the reassignment and possible options.[2] This call was an internal call with our Team and did not include any members of the *Walker* team. I participated in this call, along with Melody Eagan and Jeff Doss from Lightfoot. I do not specifically recall who else from our Team participated in this call. During the call, there was discussion about the fact that the normal procedure for consolidation in the first-filed case was not followed and our lack of explanation for why or how the case was reassigned to Judge Burke, *sua sponte*. There was also discussion about the lack of clarity about the effect of Judge Axon's order and the impact the order might have on our ability to be the lead

[2] In the Panel's July 8, 2022 Order, the Panel inquires about a "conference call that occurred on April 15, 2022." Doc. 22, ¶ 5. I do not know if the Panel is referring to the Team call that took place on April 15, 2022, in which I participated. Other than the Team call referenced in Paragraph 22 herein, I did not participate in any other conference calls that day regarding Judge Axon's transfer order and the decision to dismiss *Ladinsky*, and I did not participate in any calls with the *Walker* team on April 15, 2022 or at any other time.

case. Instead of *Walker* being consolidated with *Ladinsky* in front of Judge Axon in the Southern Division where our case had been pending for nearly a week, *Ladinsky* had been transferred to Judge Burke in the Northeastern Division where *Walker* had been pending for only a few hours. With few options to address our concerns late in the day on a Friday, and with the prospect that the Defendants could file an answer at any time and deprive the Plaintiffs of the ability to do a Rule 41 voluntary dismissal, the decision ultimately was made to recommend to our clients that they should voluntarily dismiss *Ladinsky* pursuant to Rule 41.

23. After this call, others on our Team communicated with our clients about their options and our recommendations. I did not participate in these communications. I understood that others on our Team communicated with the *Walker* team about our decision and learned that the *Walker* plaintiffs also planned to voluntarily dismiss their action. I was not involved in these communications either and have no personal knowledge of what was discussed.

24. That evening around 6:00 p.m., at the request of Melody Eagan or Jeff Doss, I drafted a voluntary notice of dismissal pursuant to Rule 41(a)(i)(A)(1) and circulated to our Team for review. Melody Eagan and Jeff Doss approved it, and our office filed it shortly thereafter at 6:33 p.m.

25. After the dismissal, I learned from an email circulated by a member of our Team that the Attorney General's Office had released a statement on Twitter

regarding the dismissal and suggesting victory. I was generally aware that our Team intended to respond to media inquiries regarding the dismissal to make clear that we still intended to challenge VCAP, but I did not draft any statements to the media or make any statements to the media.

26. Over the weekend following April 15, 2022, I had discussions with Melody Eagan and Jeff Doss about next steps for filing a new lawsuit to challenge VCAP. I was aware that some on our Team were involved in identifying potential clients for the new lawsuit and making contact with them, but I was not involved in identifying any potential clients or making contact with them. I do not know how those decisions were made or who was involved in making those decisions. As an associate working on the case, my focus at that time was on finalizing the new Complaint that ultimately was filed in the case styled *Eknes-Tucker v. Marshall*, Case No. 2:22-cv-00184-LCB (M.D. Ala.) ("*Eknes-Tucker*") and completing our preliminary injunction motion and supporting papers.

27. At some point over the weekend, the decision was made to file *Eknes-Tucker* in the Middle District of Alabama. I was not involved in making this decision, but I understood from Melody Eagan that the majority of our new plaintiffs resided in or around the Montgomery area. To my knowledge, there were no discussions about seeking a particular judge or avoiding a particular judge in the Middle District and no discussions about actions our Team could take to impact the

random case assignment procedures. In addition, to my knowledge, no one on our Team took any steps to affect the random case assignment of the *Eknes-Tucker* matter either before or after it was filed.

28. On Tuesday, April 19, 2022, we filed the Complaint in the *Eknes-Tucker* matter in the Middle District of Alabama. After our runner filed the Complaint, he called me and told me that the clerk at the Middle District was concerned that the Complaint included the names of minors and asked me to call her. I called her back that afternoon and informed her that the names of all minors and their parents were pseudonyms and that we intended to file a motion to proceed pseudonymously as soon as a case number was assigned. That afternoon and into the next morning, I had several more conversations with the clerk about how to proceed with our pseudonym motion and whether a case number could be assigned before we filed that motion. Finally, the clerk informed our Team that the clerk's office would assign a case number that day and then we could file our pseudonym motion.

29. Several hours later, after business hours as I recall, a case number was assigned, and the case was assigned to Judge Huffaker. Within minutes, Judge Huffaker entered an order reassigning the case to Judge Burke. At the time of filing the Complaint and Judge Huffaker's order, I was not aware of the existence or contents of Judge Burke's April 18, 2022 Order. I had no idea how or why Judge

Huffaker transferred the case to Judge Burke, but our Team took no action after the transfer, appeared at the status conference on April 22, 2022, and offered to address Judge Burke's concerns (which we had learned about on April 21, 2022, after the case was transferred to Judge Burke) and explain the *Ladinsky* dismissal. Thereafter, our Team proceeded with our preliminary injunction motion in the *Eknes-Tucker* case before Judge Burke, a two-day hearing was held on May 5 and 6, 2022, and the Defendants have now appealed Judge Burke's ruling.

30. With respect to the topics listed in this Court's July 8, 2022 Order, Topics 1, 2, 3, 5, and 6 are addressed in the narrative above.

31. With respect to Topic 4, after Lightfoot was associated by King & Spalding in May 2020, I am not aware of any attempts to associate other law firms to work on the *Ladinsky* or *Eknes-Tucker* matters. I did not work on *Walker* at any time and have no knowledge of any attempts by the *Walker* team to associate other law firms in the *Walker* matter.

32. With respect to Topic 7, Melody Eagan, Jeff Doss and I sought legal advice from Chris King and Sam Franklin in preparation for the May 20, 2022 hearing. At the request of Messrs. King and Franklin, I reviewed and offered edits to a document that I believe Jeff Doss initially drafted that discussed the events we understood the Panel might want explained at the May 20 hearing. I believe those communications are privileged as attorney-client communications. I was not

intending to speak at the May 20 hearing unless I was called on by the Panel, and my understanding was that the Team intended to have Mr. Doss answer the panel's questions on its behalf. I had no discussions with anyone on the *Walker* team in preparation for the May 20, 2022 hearing, and I am not aware of any "Q&A document" that may have been circulated among their team.

33. With respect to Topic 8, I am aware of the following individuals:

i. Shannon Minter, Legal Director, National Center for Lesbian Rights; involved in strategy in the *Ladinsky* and *Eknes-Tucker* matters;

ii. Counsel for the *Ladinksy* and *Walker* attorneys who have appeared in this proceeding, including Samuel H. Franklin and M. Christian King of Lightfoot, Franklin & White.

34. I have, to the best of my knowledge and belief, complied with the Panel's July 8 and 25, 2022 orders, consistent with protecting what I believe to be attorney-client privileged information. I have supplied information above that I consider to be work product as ordered by the Court on July 25, 2022, without intending to waive the arguments made in the Motion for Protective Order filed on my behalf.

I declare under penalty of perjury under the laws of the United State of America that the foregoing is true and correct to the best of my knowledge.

[signature]

Amie A. Vague

7/28/2022

Date