CONFIDENTIAL
FOR IN CAMERA INSPECTION ONLY

# DECLARATION OF BRENT P. RAY

1. I am a Partner at King & Spalding LLP ("K&S"), practicing in the Chicago office. I am a member in good standing of the Bar of the Courts of Illinois and New York. I was one of the attorneys representing the plaintiffs in *Ladinsky v. Ivey* and now am one of the attorneys representing the plaintiffs in *Eknes-Tucker v. Marshall*.

2. The matters stated herein are based upon my personal knowledge and are true and complete to the best of my knowledge, information, and belief.

3. Other attorneys representing the plaintiffs in *Eknes-Tucker* are co-counsel from Lightfoot Franklin & White ("Lightfoot") and lawyers from advocacy groups (Southern Poverty Law Center ("SPLC"), GLBTQ Advocates & Defenders ("GLAD"), the Human Rights Campaign Foundation ("HRC"), and the National Center for Lesbian Rights ("NCLR") (collectively, the "Advocacy Groups")). These same groups also represented the plaintiffs in *Ladinsky*.

4. I primarily practice intellectual property before the federal courts. K&S represented the plaintiffs in *Ladinsky* on a pro bono basis. K&S also represents the *Eknes-Tucker* plaintiffs on a pro bono basis.

5. I am not admitted to practice law in the State of Alabama. I was never admitted in the *Ladinsky* case. I am admitted *pro hac vice* in *Eknes-Tucker*. My primary role in the *Ladinsky* and *Eknes-Tucker* lawsuits was as the initial point of

CONFIDENTIAL
FOR IN CAMERA INSPECTION ONLY

contact from K&S when NCLR contacted K&S in 2020 about fighting proposed Alabama legislation (later iterations of which eventually became the Vulnerable Child Compassion and Protection Act (the "Act")), and to arrange the legal team at K&S to work on the matter.

6. I departed the United States for a vacation with my family to Paris, France on Thursday, April 14, 2022, at 6:00 PM Central Time. I returned to the United States on Monday, April 18, 2022, at 2:00 PM Central Time. During this time, I was not involved in any calls or substantive discussions regarding *Ladinsky* or *Eknes-Tucker*.

7. **Judicial Assignments (Topics 1 and 2):**

   a. *Ladinsky* was first assigned to Judge Anna M. Manasco. Shortly thereafter, Judge Manasco recused herself. I am not aware of any action or plan that was intended to cause or did cause this recusal. At the time, it was my understanding that Judge Manasco recused herself because she was on the board at UAB, where Dr. Ladinsky practiced. I do not have personal knowledge of whether that is true.

   b. *Ladinsky* was next assigned to Magistrate Judge Staci G. Cornelius. I received a copy of the order reassigning the case apparently because there was not unanimous consent. I do not

        have personal knowledge whether all parties consented to Judge Cornelius's jurisdiction. I am not aware of any action or plan that was intended to cause or did cause this reassignment.

c.    *Ladinsky* was next assigned to Judge Annemarie Carney Axon. I received a copy of the order from Judge Axon reassigning the case to Judge Burke, stating that the transfer was "in the interest of efficiency and judicial economy." I am not aware of any action or plan that was intended to cause or did cause this reassignment. I was in Europe when this occurred.

d.    I am aware that *Walker* counsel had filed their case in the Middle District and selected on the civil docket sheet that their case was related to *Corbitt*. I was not involved in that decision nor do I have personal knowledge about that decision. I am aware of discussions among *Ladinsky* counsel about the *Corbitt* case, whether the *Walker* case would be treated as a related case to *Corbitt*, and general updates on the briefing and ruling on the *Walker* Plaintiffs' motion for treatment as a related case. I am aware of a discussion about the potential for *Ladinsky* to be consolidated before Judge Thompson or whether *Walker* would be transferred to the Northern District to be consolidated with

3

CONFIDENTIAL
FOR IN CAMERA INSPECTION ONLY

*Ladinsky*. I never spoke with *Walker* counsel on any of these topics.

e. I am aware that *Walker* was transferred to the Northern District and assigned to Judge Burke. It was my understanding that the parties in *Walker* consented for the case to be transferred to the Northern District. I do not have knowledge regarding why *Walker* was assigned to Judge Burke.

f. *Eknes-Tucker* was first assigned to Judge R. Austin Huffaker, Jr. I received a copy of the order transferring the case to Judge Burke. The order transferring the case stated that it was being reassigned to a judge who presided over a prior related case. I am not aware of any action or plan that was intended to cause or did cause this assignment or reassignment.

g. As the *Ladinsky* case was assigned to various judges, *Ladinsky* counsel shared among one another any insight they had on the judges either from personal experience or publicly available resources. These discussions were not intended to cause, nor did they cause, an assignment or reassignment.

4

CONFIDENTIAL
FOR IN CAMERA INSPECTION ONLY

8. **Parties, Venue, and Association of Law Firms (Topics 3 and 4)**

    a.    NCLR contacted me in early 2020 to ask if K&S would be involved in fighting proposed Alabama legislation that eventually became the Act. I was also involved in the selection of Lightfoot as K&S's co-counsel through Michael Shortnacy.

    b.    I was not materially involved in the discussions or decision-making process regarding which parties to name or where those parties were located for *Ladinsky* or *Eknes-Tucker*. Based on where the parties were located, I agreed with the decision to file *Ladinsky* in the Northern District of Alabama.

    c.    I was not involved in the selection of parties, venue, or law firms for the *Walker* case.

    d.    After *Ladinsky* and *Walker* were dismissed, I am aware of discussions regarding whether *Walker* counsel and *Ladinsky* counsel would coordinate to file a consolidated lawsuit together. I understand that the American Civil Liberties Union ("ACLU") (who represented the *Walker* plaintiffs) advised *Ladinsky* counsel of their decision not to file another lawsuit. I was not involved in discussions with *Walker* counsel on this topic.

CONFIDENTIAL
FOR IN CAMERA INSPECTION ONLY

9. **Dismissal of *Ladinsky* and *Walker* (Topic 5)**

   a. Late in the afternoon Central Time on April 15, 2022, I received by email a copy of an unexpected order reassigning *Ladinsky* from Judge Axon, who had the first-filed case, to Judge Burke, who had *Walker*, the second-filed case. Since it was nighttime where I was (in Europe), I did not see the order until the next morning. By that time *Ladinsky* had already been dismissed.

   b. I am aware of a call between at least some of the *Ladinsky* counsel on April 15, 2022. I did not participate in the call, and did not know of its existence or occurrence until the next morning.

   c. It seemed to me that the reassignment of the first-filed case to the second-filed judge was unexpected and irregular. It was important to several of my *Ladinsky* co-counsel to be the first-filed case so that we could be the lead counsel and our clients the lead plaintiffs.

   d. Based on what I knew at the time, I agreed with the decision that had been made to voluntarily dismiss the case and file a new lawsuit the following week. However, because of my very limited experience practicing in Alabama, including in its federal

CONFIDENTIAL
FOR IN CAMERA INSPECTION ONLY

courts, I deferred (and will continue to defer) to the advice and knowledge from the lawyers at Lightfoot who are more experienced in practicing there.

10. **Filing *Eknes-Tucker* in the Middle District (Topic 6):** I did not participate substantively in any discussions about filing *Eknes-Tucker* in the Middle District. I am aware that *Ladinsky* counsel had contemplated potentially filing *Eknes-Tucker* in the Northern District of Alabama, but obviously, that was not done. I did not participate substantively in any discussions on that topic.

11. At the time following the voluntary dismissal of *Ladinsky* and the filing of *Eknes-Tucker*, I did not know about Judge Burke's April 18, 2022 Order in *Walker* (Doc. 24). I did not learn of this *Walker* Order until April 21, 2022, after one of my co-counsel shared a news article about *Eknes-Tucker* that referenced Judge Burke referring to "judge shopping." I am aware of discussions among *Ladinsky* counsel about these allegations on April 20 and 21, after the Attorney General tweeted about "judge shopping."

12. **Preparation for the May 20, 2022 Hearing (Topic 7):**

    a. In preparation for the hearing on May 20, 2022, K&S sought input from our K&S's Office of General Counsel. I also had conversations with my colleagues and K&S's Office of General Counsel which I believe are privileged and confidential.

7

  b. Additionally, I reviewed a document provided by Lightfoot's in-firm counsel to K&S's General Counsel regarding the upcoming hearing, the contents of which I believe are privileged and confidential.[1] I also received a document that was prepared with K&S's General Counsel, the contents of which I believe are privileged and confidential.[2]

  c. Going into the May 20, 2022 hearing, I anticipated a hearing where counsel, specifically Jeffrey Doss on behalf of *Ladinsky* counsel, would present to the Panel. I anticipated that I also might have to answer questions. I did not anticipate a hearing where all or most of the counsel would be called to testify under oath. I was not instructed to answer questions a certain way nor told to tell the Panel anything but the truth. I also did not instruct any of my K&S colleagues to answer questions a certain way.

  d. I did not have any discussions with the Advocacy Groups or *Walker* counsel to prepare for the hearing. I have not discussed with anyone other than my attorneys (Bruce Rogers, Jennifer

---

[1] This document was intended to be and was marked attorney-client communication, attorney work product, joint defense/common interest privilege, and privileged and confidential.
[2] This document was intended to be and was marked privileged and confidential.

8

CONFIDENTIAL
FOR IN CAMERA INSPECTION ONLY

Wheeler, K&S General Counsel Robert Thornton, and K&S Deputy General Counsel Pat Brumbaugh) the questions that were actually asked by the court at the May 20, 2022 hearing.

13. **Other Attorneys (Topic 8):** The only attorney I am aware of being involved in any of the listed matters that was not included in the original order is Shannon Minter.

14. I have shared with colleagues at K&S the fact that this proceeding is ongoing, that I have been ordered to file a declaration, that I am meeting with my counsel, and that I have been ordered to attend a hearing in Alabama on August 3-4. I have also discussed this proceeding generally with my wife. I have not discussed the substance of this matter or the substance of my testimony with anyone except my attorneys since being ordered not to do so. I will continue to comply with the court's order in this regard.

I, Brent P. Ray, declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on _____July 27__, 2022.

_____
Brent P. Ray

9