CONFIDENTIAL
FOR IN CAMERA INSPECTION ONLY

# **DECLARATION OF MICHAEL SHORTNACY**

1.  I am a Partner at King & Spalding LLP ("K&S"), resident in its Los Angeles office. I am a member in good standing of the Bar of the courts of California, New York, and the District of Columbia. I was one of the attorneys representing the plaintiffs in *Ladinsky v. Ivey* and now am one of the attorneys representing the plaintiffs in *Eknes-Tucker v. Marshall*.

2.  The matters stated herein are based upon my personal knowledge and are true and complete to the best of my knowledge, information, and belief.

3.  Other attorneys representing the plaintiffs in *Eknes-Tucker* are co-counsel from Lightfoot Franklin & White ("Lightfoot") and lawyers from advocacy groups (Southern Poverty Law Center ("SPLC"), GLBTQ Advocates & Defenders ("GLAD"), the Human Rights Campaign Foundation ("HRC"), and the National Center for Lesbian Rights ("NCLR") (collectively, the "Advocacy Groups")). These same groups also represented the plaintiffs in *Ladinsky*.

4.  My law practice is focused on the defense of consumer class actions and regulatory enforcement actions relating to consumer protection statutes, primarily in the automotive and consumer product industries. K&S represented the plaintiffs in *Ladinsky* on a pro bono basis. K&S also represents the *Eknes-Tucker* plaintiffs on a pro bono basis.

5. I am not admitted to practice law in the State of Alabama. I was never admitted in the *Ladinsky* case. Other than in the *Eknes-Tucker* case, where I am admitted *pro hac vice*, I have not appeared or moved to appear before any federal or state court in Alabama.

6. **Judicial Assignments (Topics 1 and 2):**

   a. *Ladinsky* was first assigned to Judge Anna M. Manasco. Shortly thereafter, Judge Manasco recused herself. I am not aware of any action or plan that was intended to cause or did cause this recusal. At the time, it was my understanding that Judge Manasco may have recused herself because she was on the board of UAB, where Dr. Ladinsky practices. I do not have personal knowledge of whether that is true.

   b. *Ladinsky* was next assigned to Magistrate Judge Staci G. Cornelius. I do not have personal knowledge whether all parties consented to Judge Cornelius's jurisdiction. It was my understanding at the time that *Ladinsky* counsel intended to consent to Judge Cornelius, but I was not aware of the local rules and practices for consenting to, or declining, the magistrate judge's jurisdiction. I received a copy of the order reassigning the case from Judge Cornelius, which I assumed may have been

CONFIDENTIAL
FOR IN CAMERA INSPECTION ONLY

because there was not unanimous consent by all parties to her jurisdiction. I am not aware of any action or plan that was intended to cause or did cause this reassignment.

c. *Ladinsky* was next assigned to Judge Annemarie Carney Axon. I received a copy of the order from Judge Axon, *sua sponte* transferring the case to Judge Liles C. Burke, stating that the transfer was "in the interest of efficiency and judicial economy." I am not aware of any action or plan that was intended to cause or did cause this reassignment.

d. I am aware that *Walker* counsel had filed their case in the Middle District and selected on the civil docket sheet that their case was related to *Corbitt*. I was not involved in that decision nor do I have personal knowledge about that decision. I am aware of discussions among *Ladinsky* counsel about the *Corbitt* case, whether Judge Marks might consider the *Walker* case as a related case to *Corbitt*, and general updates on the briefing and ruling on the *Walker* Plaintiffs' motion for treatment as a related case. I am aware of a discussion among *Ladinsky* counsel about the potential for *Ladinsky* to be consolidated before Judge Marks or Judge Thompson or whether *Walker* would likely be transferred

3

to the Northern District to be consolidated with *Ladinsky*, since *Ladinsky* was the first-filed case. I participated on a video conference with *Walker* counsel regarding their case on April 13, 2022 (*See* ¶ 8). I believe there was a common interest agreement reached between *Ladinsky* counsel and *Walker* counsel so that we could communicate confidentially about our cases, but to my knowledge, a formal document memorializing this agreement was not executed.

e. I am aware that *Walker* was transferred to the Northern District and assigned to Judge Burke after Judge Marks ordered the *Walker* parties to show cause why the *Walker* case should not be transferred to the Northern District of Alabama in light of the first-filed *Ladinsky* case. It was my understanding that the parties in *Walker* consented for the case to be transferred to the Northern District. I do not have knowledge regarding why *Walker* was assigned to Judge Burke. It was my understanding that while *Ladinsky* was still pending before Judge Axon, the State of Alabama, through its Office of the Attorney General, was taking steps to have *Walker* consolidated with *Ladinsky*, such as

CONFIDENTIAL
FOR IN CAMERA INSPECTION ONLY

preparing a motion to consolidate to file before Judge Axon, since *Ladinsky* was the first-filed case.

f. *Eknes-Tucker* was first assigned to Judge R. Austin Huffaker, Jr. I received a copy of the order transferring the case to Judge Burke. The order transferring the case stated that it was being reassigned to a judge who presided over two prior related cases. I am not aware of any action or plan that was intended to cause or did cause this assignment or reassignment.

g. As the *Ladinsky* case was assigned serially to Judges Manasco, Cornelius, and Axon, *Ladinsky* counsel shared among one another any insight they had on the assigned judges either from personal experience or publicly available resources. These discussions were not intended to cause, nor did they cause, an assignment or reassignment.

h. After the *Ladinsky* case was assigned to Judges Cornelius and Axon, I asked Abigail Terry to work with K&S's library staff to pull background information on each of the judges We also pulled this background information on Judge Burke, but not until after *Eknes-Tucker* was filed and transferred to Judge Burke. It is my standard practice to pull this information for any judge to

5

CONFIDENTIAL
FOR IN CAMERA INSPECTION ONLY

whom my cases are assigned. None of this research was intended to cause or did cause an assignment, reassignment, or recusal.

7. **Parties, Venue, and Association of Law Firms (Topics 3 and 4)**

   a. I was directly involved in proposing and selecting Lightfoot as our co-counsel. I grew up in Birmingham, Alabama and have a childhood friend who previously worked in a non-legal capacity for Lightfoot. As a result, I knew that Lightfoot is an excellent law firm that practiced before all Alabama courts.

   b. I was involved in the drafting of the complaint in *Ladinsky* and agreed with the decision to file that complaint in the Northern District of Alabama.

   c. For *Ladinsky*, I was involved in the decision-making process regarding which parties to name, but I deferred to Lightfoot and the Advocacy Groups who were in direct contact with the plaintiffs. Based on where the plaintiffs were located, we elected to file *Ladinsky* in the Northern District of Alabama.

   d. For *Eknes-Tucker*, I was involved in discussions about which parties to name, but I was not involved in the final decision-making process regarding which parties to name or where to file that case. I did not make the decision regarding who to include

6

CONFIDENTIAL
FOR IN CAMERA INSPECTION ONLY

as plaintiffs. It was my understanding that potential plaintiffs had, since *Ladinsky* was first filed, been reaching out to the Advocacy Groups to be included.

    e.    I was not involved in the selection of parties, venue, or law firms for the *Walker* case. (*See also* ¶ 8.)

    f.    After *Ladinsky* and *Walker* were dismissed, I am aware of discussions regarding whether *Walker* counsel and *Ladinsky* counsel would possibly coordinate to file a consolidated lawsuit together. (*See* ¶ 9(i).) I understand that the American Civil Liberties Union ("ACLU") (who represented the *Walker* plaintiffs) advised *Ladinsky* counsel of their decision not to file another lawsuit. I was not involved in discussions with *Walker* counsel on this topic.

8. On April 13, 2022, I participated in a video conference between *Walker* counsel and *Ladinsky* counsel to discuss *Walker* counsel's response to Judge Marks' Order to Show Cause why *Walker* should not be transferred to the Northern District of Alabama.

    a.    Participants I recall are *Walker* lawyers James Esseks ("Mr. Esseks") from the ACLU and Carl Charles ("Mr. Charles") from Lambda Legal, one or more lawyers from Cooley, Asaf Orr

7

CONFIDENTIAL
FOR IN CAMERA INSPECTION ONLY

("Mr. Orr") from NCLR, and Melody Eagan ("Ms. Eagan") from Lightfoot. There may have been others from Lightfoot or the Advocacy Groups on the call, but I cannot recall whom. I cannot recall if any of my colleagues from K&S were on the call.

    b.    The call was led by Mr. Esseks and Mr. Charles. The ACLU was developing its response to the Order to Show Cause and discussing whether *Ladinsky* and *Walker* should both be consolidated before Judge Thompson.

    c.    *Ladinsky* counsel told *Walker* counsel that we did not have a position on where *Walker* should be assigned or transferred. It was our belief at that time that even if the *Walker* case was transferred to Birmingham, *Ladinsky* would remain the first-filed case.

    d.    The next day, the *Walker* parties consented to transfer the case to the Northern District of Alabama. Shortly thereafter, *Walker* was transferred to the Northern District of Alabama and assigned to Judge Burke.

9. **Dismissal of *Ladinsky* and *Walker* (Topic 5):**

    a.    Late in the afternoon on April 15, 2022, I received by email a copy of an unexpected order from Judge Axon, *sua sponte*

8

CONFIDENTIAL
FOR IN CAMERA INSPECTION ONLY

transferring *Ladinsky* (the first-filed case), to Judge Burke (who had *Walker*, the second-filed case).

b. I was concerned that the transfer of the first-filed case to the second-filed judge was unexpected and irregular. It was important for *Ladinsky* to be the first-filed case so that we could be the lead counsel and our clients the lead plaintiffs.

c. I participated in a video conference call with several of the *Ladinsky* counsel on April 15, 2022. Abigail Terry also participated in the call. She and I are the only lawyers I recall being present from K&S. Other participants I recall were Melody Eagan ("Ms. Eagan") and Amie Vague ("Ms. Vague") from Lightfoot, and Shannon Minter ("Mr. Minter") from NCLR. There may have been others from the Advocacy Groups on the call, but I cannot recall whom.

d. I was in Los Angeles on April 15, but the call occurred while I was out of the office at lunch. I was therefore away from my computer and standing on a street corner to take the call. I participated on the call by telephone only, and could not always identify who was speaking.

9

CONFIDENTIAL
FOR IN CAMERA INSPECTION ONLY

e. Just before the transfer of *Ladinsky* to Judge Burke, Ms. Eagan had spoken with the Attorney General's Office (acting on behalf of the State of Alabama) about filing a consent motion to consolidate *Walker* with *Ladinsky*, which was the first-filed case pending before Judge Axon. I later learned from Ms. Eagan that the State had already been preparing such a motion to file with Judge Axon.

f. We discussed the unexpected transfer of the case to Judge Burke, whether *Ladinsky* would remain the first-filed case and we would remain lead counsel in light of the transfer, an assessment of Judge Burke's background, and our ability to file a voluntary dismissal under Rule 41 of the Federal Rules of Civil Procedure before the State filed a responsive pleading or answer.

g. We also discussed whether we could file before Judge Axon a motion to reconsider the transfer, or call Judge Axon's chambers to sort out the *sua sponte* transfer of the first filed case. However, the belief was that Judge Axon had lost jurisdiction the moment she transferred the case away to Judge Burke.

h. Because I have not practiced in Alabama or in its federal courts before, I did not have any opinion of Judge Burke and deferred

10

CONFIDENTIAL
FOR IN CAMERA INSPECTION ONLY

to the advice and knowledge from the lawyers at Lightfoot and the Advocacy Groups that were more experienced in practicing there.

i. The decision was made to dismiss *Ladinsky* (as we believed we were entitled to do under Rule 41 of the Federal Rules of Civil Procedure) that afternoon and to file a new lawsuit the following week, potentially working with *Walker* counsel, and adding new claims, and parties. (*See also* ¶ 7(f).)

j. After the call, I instructed Abigail Terry to internally communicate the decision to K&S colleagues who were not on the call.

k. Lightfoot and the Advocacy Groups spoke with *Walker* counsel and our clients, and Lightfoot filed our voluntary dismissal. I was not involved in any conversation with *Walker* counsel or with our clients about the dismissal.

10. **Filing *Eknes-Tucker* in the Middle District (Topic 6):** My primary role at this stage in *Eknes-Tucker* was to prepare a new complaint. We were going to file *Eknes-Tucker* in the Southern Division of the Northern District of Alabama. I later learned, based on the location of the plaintiffs and defendants named in *Eknes-Tucker*, that Lightfoot and the Advocacy Groups made the decision to file *Eknes-*

CONFIDENTIAL
FOR IN CAMERA INSPECTION ONLY

*Tucker* in the Middle District. I was not involved in that decision. This decision was communicated to me after it was made.

11. At the time following the voluntary dismissal of *Ladinsky* and the filing of *Eknes-Tucker*, I did not know about Judge Burke's April 18, 2022 Order in *Walker* (Doc. 24). I did not learn of this *Walker* Order until April 21, 2022, after one of my co-counsel shared a news article about *Eknes-Tucker* that referenced Judge Burke referring to "judge shopping." I am aware of discussions among *Ladinsky* counsel about these allegations on April 20 and 21, after the Attorney General tweeted about "judge shopping."

12. **Preparation for the May 20, 2022 Hearing (Topic 7):**

   a. In preparation for the hearing on May 20, 2022, K&S sought input from our Office of General Counsel. I also had conversations with my colleagues and K&S's Office of General Counsel which are privileged and confidential.

   b. Additionally, I reviewed and provided comments on a document provided by Lightfoot's in-firm counsel to K&S's General Counsel regarding the upcoming hearing, the contents of which I believe are privileged and confidential.[1] I also reviewed a

---

[1] This document was intended to be and was marked attorney-client communication, attorney work product, joint defense/common interest privilege, and privileged and confidential.

12

CONFIDENTIAL
FOR IN CAMERA INSPECTION ONLY

    document that was prepared with K&S's General Counsel, the contents of which I believe are privileged and confidential.[2]

c.   Going into the May 20, 2022 hearing, I anticipated a hearing where counsel, specifically Jeffrey Doss on behalf of *Ladinsky* counsel, would present to the Panel. I anticipated that I also might have to answer questions. I did not anticipate a hearing where all or most of the counsel would be called to testify under oath. I was not instructed to answer questions a certain way nor told to tell the Panel anything but the truth. I also did not instruct any of my K&S colleagues to answer questions a certain way nor to tell the Panel anything but the truth.

d.   I had brief discussions with our *Eknes-Tucker* co-counsel about whether we could or should retain joint counsel for the hearing. Obviously, we decided not to. I did not have any discussions with *Walker* counsel to prepare for the hearing. I have not discussed with anyone other than my attorneys (Bruce Rogers, Jennifer Wheeler, K&S's General Counsel Robert Thornton, and K&S's Deputy General Counsel Pat Brumbaugh) the questions that were actually asked by the court at the May 20, 2022 hearing.

---

[2] This document was intended to be and was marked privileged and confidential.

13

CONFIDENTIAL
FOR IN CAMERA INSPECTION ONLY

13. **Other Attorneys (Topic 8):** The only attorney I am aware of being involved in any of the listed matters that was not included in the original order is Shannon Minter.

14. For purposes of discussing scheduling, availability, and travel logistics, I have shared with colleagues at K&S the fact that this proceeding is ongoing, that I have been ordered to file a declaration, that I am meeting with my attorneys, and that I have been ordered to attend a hearing in Alabama on August 3-4. I have discussed the same with my parents (who still live in Birmingham, Alabama) and my spouse. I have not discussed the substance of this matter or the substance of my testimony with anyone except my attorneys since being ordered not to do so.

I, Michael B. Shortnacy, declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on _July 27_, 2022.

_____
Michael B. Shortnacy