UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA

*In re* **Amie Adelia Vague, et al**        )        Case No. 2:22-mc-03977-WKW
                                                                     )        (Middle District of Alabama)

## DECLARATION OF LYNLY S. EGYES

I, Lynly S. Egyes, declare:

1.  I am providing this *in camera* Declaration as required by the Panel's July 8, 2022 Order in the above referenced proceeding. By doing so, I am not waiving any privilege, including the attorney client privilege and the protections of the attorney work product doctrine. The matters stated herein are based upon my personal knowledge and are true and complete to the best of my recollection.

2.  I understand the Panel's July 25, 2022 Order (ECF 41) requires me to disclose work product responsive to the topics in the Panel's July 8, 2022 Order. To comply with that Order, I am, on the advice of counsel, disclosing certain information protected by the work product doctrine in this declaration. To preserve

my objection to the sharing of this information, I have highlighted this protected information in blue throughout my declaration. I further understand that in submitting this information *in camera* under order of the Panel, I am not waiving any privilege protected by the work product doctrine.

3. I graduated Cardozo law school in 2009 and began practicing law thereafter. I was admitted to the State Bar of New Jersey in November of 2009. Prior to law school I obtained my B.A. in sociology from Ithaca College in 2003.

4. Currently I am admitted to the State Bars of New Jersey and New York and admitted to practice before the Supreme Court of the United States and the United States District Court for the District of Colorado.

5. I am in good standing in all Bars wherever admitted. No disciplinary or grievance proceedings have been filed or are pending against me, nor have my professional ethics ever been questioned by any court.

6. My legal career has been dedicated to helping those in need of counsel who would not otherwise have access to it, including lesbian, gay, bisexual, and transgender ("LGBT") individuals, victims of abuse, victims of human trafficking, and sex workers.

7. I am an expert on human trafficking of LGBT individuals. Due to this expertise, I have been invited to train and train with the Federal Bureau of Investigation ("FBI"), the Department of Homeland Security ("DHS"), various U.S.

Attorneys' Offices, the New York Administration for Children Services, and other federal and state agencies.

8. Additionally, throughout my career I have cultivated close working relationships with members of the FBI and DHS. Prior to joining Transgender Law Center ("TLC"), I was frequently asked by DHS to represent individuals they suspected were human trafficking victims. I am still sometimes called upon by these agencies when they require expert input into human trafficking of LGBT individuals or individuals from certain areas in Mexico.

9. Since joining TLC, I have led efforts to create the first-ever manual for identifying LGBT human trafficking victims, which is expected to be released in September 2022. Members of federal law enforcement have expressed interest in working with TLC to ensure the manual is widely distributed as a resource for federal and state employees interacting with trafficking victims.

10. I joined TLC in 2017, where I started as Director of Litigation and later shifted to my current position as Legal Director. As Legal Director, I oversee all of TLC's litigation efforts, including developing strategy and supervising three other litigators as well as other employees. My role also includes deciding which cases to pursue and how best to allocate TLC's limited litigation resources.

## Role In The *Ladinsky*, *Walker*, And *Eknes-Tucker* Cases

11. I became aware of and involved in the litigation that was ultimately filed as *Walker v. Marshall*, No. 2:22-cv-00167 (M.D. Ala) ("*Walker*") in or around March 2022. I was the senior lawyer on the team from TLC and supervised two junior TLC attorneys, Milo Inglehart and Dale Melchert, as part of my work on this matter.

12. When TLC joined the team that represented the *Walker* plaintiffs, I understood that the other organizations on the team (the ACLU, the ACLU of Alabama, Lambda Legal, and the Cooley law firm) had been preparing to litigate since 2020. As the newest member of the team, I relied upon and trusted the strategic decisions the team had made that pre-dated TLC's involvement.

13. At the time I joined the team preparing to file *Walker*, I knew that other legal organizations were also preparing to file litigation challenging the legality of Alabama's SB 184.

14. I had no involvement in the preparation, filing, or litigation of *Ladinsky v. Ivey*, No. 5:22-cv-00447 (N.D. Ala.) ("*Ladinsky*"), nor have I had any involvement in the preparation, filing, or litigation of *Eknes-Tucker v. Marshall*, No. 2:22-cv-00184 (M.D. Ala.) ("*Eknes-Tucker*").

**Specific Responses To The Panel's July 8, 2022 Order (ECF 22) Topics**

**1.     The actual or potential judicial assignments in *Ladinsky*, *Walker*, and/or *Eknes-Tucker***

15.   I did not participate in any conversations regarding the actual or potential judicial assignments in *Ladinsky* or *Eknes-Tucker*. My knowledge of judicial assignments concerning those two cases is limited to understanding that *Ladinsky* was originally assigned to Judge Monasco, who recused herself, was then assigned to Judge Axon, and was later transferred to Judge Burke. I also know that *Eknes-Tucker* was assigned to Judge Burke.

16.   When TLC joined the *Walker* team in or around March 2022, I understood that the other organizations and attorneys on the *Walker* team had already decided to file the case in the United States District Court for the Middle District of Alabama ("M.D. Alabama").

17.   I also understood that the *Walker* team intended to designate *Walker* as related to *Corbitt v. Taylor*, No. 2:18-cv-00091 (M.D. Ala.) ("*Corbitt*"), a case brought by the ACLU concerning an Alabama law that required transgender individuals to show proof of gender-affirming surgery before being able to change their gender marker on their driver's license.

18.   At some point prior to filing *Walker*, I learned that Judge Thompson was the judge assigned to the *Corbitt* case. The *Walker* team anticipated that if the

Court agreed that *Walker* was related to *Corbitt*, Judge Thompson would be assigned to preside over *Walker*.

19. After *Walker* was filed, the case was assigned to Chief Judge Marks. I participated in the decision to file a motion to reassign the case to Judge Thompson on the basis that it was related to *Corbitt*.

20. I also participated in the *Walker* team's ultimate decision not to oppose the transfer of *Walker* to the United States District Court for the Northern District of Alabama ("N.D. Alabama"). Given how quickly Chief Judge Marks issued an Order to Show Cause after being assigned the case, our assessment was that she was already predisposed to want to transfer the case and consolidate it with *Ladinsky*. By this time, the team had also become aware that *Ladinsky* was filed in N.D. Alabama before *Walker* was filed in M.D. Alabama—something we did not know prior to filing *Walker*.

21. Finally, I participated in discussions among the *Walker* team after the case was assigned to Judge Burke. The team understood from Chief Judge Marks' Order to Show Cause that *Walker* would be consolidated with *Ladinsky* upon transfer, so we were puzzled as to why *Walker* was assigned to a different judge. On April 15, I spoke with Jennifer Levi of GLAD, from the *Ladinsky* team, Carl Charles of Lambda Legal, Li Nowlin-Sohl of the ACLU, and Kathleen Hartnett of Cooley concerning the consolidation of the two cases before Judge Axon.

6

**2.     Any actions or decisions taken in the course of preparing to file *Ladinsky*, *Walker*, and/or *Eknes-Tucker* that relate to any actions or plans that were intended to cause, actually caused, or may have caused the assignment or reassignment to, or the actual or potential recusal of, any judge in the Northern or Middle Districts of Alabama**

22.     I did not participate in and do not have knowledge of any actions or plans that were intended to cause, actually caused, or may have caused the actual or potential recusal of any judge in the Northern or Middle Districts of Alabama in any of the *Ladinsky*, *Walker*, or *Eknes-Tucker* cases, aside from my knowledge that Judge Monasco in N.D. Alabama recused herself from *Ladinsky*.

23.     I did not participate in and do not have knowledge of any actions or plans that were intended to cause, actually caused, or may have caused the assignment or reassignment of any judge in the Northern or Middle Districts of Alabama in the *Ladinsky* or *Eknes-Tucker* cases.

24.     I incorporate my response to Topic 1, which describes the actions the *Walker* team took concerning assignment or reassignment to various judges in M.D. Alabama and N.D. Alabama.

**3.     Any action or decision that relates to which parties to name in *Ladinsky*, *Walker*, and/or *Eknes-Tucker*, where to file each action, and all the reasons related to any such decision about who to name and where to file**

25.     I did not participate in and do not have any knowledge that relates to which parties to name, where to file, or any of the reasons related to those decisions in *Ladinsky* or *Eknes-Tucker*.

7

26. When TLC joined the *Walker* team, the Walker and White families had already been chosen as plaintiffs. I am aware that shortly prior to filing *Walker*, the team decided not to move forward with a third plaintiff family. I generally understood that this youth plaintiff's declaration was less developed than the other two youth plaintiffs' declarations, and the team wanted to file *Walker* as soon as possible after SB 184 was signed into law.

27. I have no recollection of being a part of any conversation about which defendants to name in the *Walker* case.

**4.  Any action or decision that relates to attempts to associate other law firms or the actual association of other law firms to work with counsel in *Ladinsky*, *Walker*, and/or *Eknes-Tucker***

28. I did not participate in and do not have any knowledge of any attempts to associate other law firms or the actual association of other law firms to work with counsel in *Ladinsky* or *Eknes-Tucker*.

29. When TLC joined the *Walker* team, Cooley was already a part of the team preparing the litigation. I had no role in and have no knowledge of the decision to have Cooley join the *Walker* team.

30. I understood that the ACLU of Alabama was "local counsel" on the *Walker* case. I was not involved in, nor am I aware of, any discussions concerning whether to hire or consult with additional local counsel.

**5.       Any and all actions or decisions that relate to coordination and/or dismissal of the *Ladinsky* and *Walker* cases and the reasons for dismissal, including but not limited to (1) the conference call that occurred on April 15, 2022 and (2) any other communications between *Ladinsky* counsel and *Walker* counsel on that topic**

31.     On the afternoon of Friday, April 15, Carl Charles asked me if I could join a Zoom call already in progress among other members of the *Walker* team. I had not been aware of the call prior to this communication from Mr. Charles. The call did not include any members of the *Ladinsky* team. During the call, *Walker* counsel was discussing the status of the *Ladinsky* and *Walker* cases. There was general puzzlement that our case had been assigned to a different judge than *Ladinsky* when the Order to Show Cause indicated the cases would be consolidated.

32.     During the Zoom call with *Walker* counsel, an update to Pacer was received indicating that *Ladinsky* had been transferred to Judge Burke, and around the same time, the team received Judge Burke's Order to appear in Alabama for a status hearing on Monday, April 18. The topic of conversation on the Zoom call then switched to discussion of the extremely short notice of the April 18th hearing. At some point thereafter, the team began to discuss the idea of dismissing *Walker*. At some point during the call, Kathleen Hartnett informed us that she had spoken to the *Ladinsky* team, and they were planning to dismiss their case. Ultimately, the *Walker* team decided to dismiss *Walker*, though the team was confident that the Alabama law would be challenged by someone. I supported dismissal because in a

9

short period of time, the *Walker* case had been transferred to a new court and was being consolidated with the *Ladinsky* case, and a status conference had been ordered without adequate time to prepare in a court that was unfamiliar to our team. On April 15, the *Walker* team filed its notice of voluntary dismissal.

33. On Saturday, April 16, I attended a call among leadership of the *Walker* team organizations and the *Ladinsky* team. During the call, it became clear that it would not be possible for the two groups of organizations to work together to file one new case going forward. Working together would mean eight nonprofit legal organizations and three law firms involved in determining case strategy and decision-making, which did not seem feasible. In addition, the advocacy groups that originally filed *Walker* and *Ladinsky* have divergent beliefs about litigation strategies and the decision-making process concerning case strategy.

6. **Any and all actions that relate to the decision to file *Eknes-Tucker* in the United States District Court for the Middle District of Alabama**

34. I did not participate in and have no knowledge of any actions that related to the decision to file *Eknes-Tucker* in M.D. Alabama.

7. **Any knowledge you have that relates to (1) preparation for the hearing in this matter (including circulation of any Q&A document), and (2) the questions expected to be asked or that were actually asked by the court at the May 20, 2022 hearing**

35. Following the May 10, 2022 Order that initiated this proceeding, the *Walker* team hired Barry Ragsdale to represent *Walker* counsel in this matter.

10

36. Mr. Ragsdale met with me and other leaders from the *Walker* team organizations a handful of times. He also met with the full team three or four times prior to the hearing. I understand that the Panel's July 25, 2022 Order (ECF 41) clarified that the Panel is not seeking any attorney-client privileged communications or requiring the declarants to waive the attorney-client privilege, and so I do not describe the contents of those privileged communications.

37. I participated in drafting a document for Mr. Ragsdale which contained a list of potential questions the Panel may ask and information applicable to respond to those questions. The document was prepared at Mr. Ragsdale's request to help prepare him to represent us in this matter. I was not a primary drafter of the document, but I reviewed and edited it.

38. I also reviewed drafts of the pre-hearing brief submitted by *Walker* counsel and a timeline created by Cooley and other members of the *Walker* team to help Mr. Ragsdale prepare for the May 20 hearing. To my knowledge, the Q&A document, pre-hearing brief drafts, and timeline have never been shared outside of the *Walker* team and our retained counsel.

**8.     The identity of each attorney, not included in the style of the original order, whom you are aware of being involved in any input, recommendation, decision, or strategy regarding any of the subjects referenced above and the details of each such person's involvement**

39.     There are no other attorneys from TLC not included in the style of the original order who were involved in any input, recommendation, decision, or strategy regarding any of the subjects referenced above.

40.     I am aware that Sharon McGowan, the Legal Director at Lambda Legal prior to the filing of *Walker*, attended some *Walker* team meetings prior to and after filing *Walker*.

41.     I am further aware that Camilla Taylor, the Director of Constitutional Litigation at Lambda Legal, participated in discussions among *Walker* counsel on April 15, 2022 concerning whether to dismiss *Walker* and in a phone call among *Walker* counsel and *Ladinsky* counsel on April 16, 2022.

## Attestation of Sequestration Order Compliance

42.     I attest that I have not discussed with any individuals named in the May 10, 2022 Order the substance of any testimony given by those individuals during the May 20, 2022 hearing, including any questions asked or answers given.  I further attest that I have not discussed the contents of my declaration with anyone other than my counsel in this proceeding.

43. Following the status conference on June 17, 2022, I received notes created by my counsel that contained a description of some of the substance of Mr. Charles' May 20, 2022 testimony. Shortly thereafter, I received a second email telling me that those notes were sent in error and asking me to delete them because they inadvertently disclosed some of the substance of testimony. I have not reviewed those notes since receiving the second email, and I deleted them.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing statements are true and correct to the best of my knowledge, information, and belief.

Dated: July 27, 2022

New York, New York

*/s/ Lynly S. Egyes*
Lynly S. Egyes

13