**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**

|  |  |  |
|---|---|---|
| *In re* **Amie Adelia Vague**, *et al.* | } } } | **Case No. 2:22-mc-03977-WKW** |

## DECLARATION OF VALERIA M. PELET DEL TORO
## PURSUANT TO JULY 8, 2022 ORDER

I, Valeria M. Pelet del Toro, declare:

1.      I submit this declaration pursuant to the Panel's July 8, 2022 Order in this matter.

2.      The matters stated herein are based upon my personal knowledge and are true and complete to the best of my knowledge.[1]  To the extent information provided in response to one of the Panel's questions is responsive to other questions,

---

[1]  Pursuant to and in compliance with the Panel's July 25, 2022 Order, I have not disclosed any attorney-client communications in this declaration.  Moreover, by submitting this declaration, I do not intend to waive the attorney work product protection as to any materials or communications disclosed herein.

I have attempted to repeat that information, but the information provided below should be considered as being provided in response to all questions as necessary, notwithstanding that it is provided in response to a specific question.

3.      I earned my Juris Doctorate from Yale Law School in 2019, and I am admitted to practice law in New York.  I am in good standing to practice law in New York and have been since I was admitted in 2020.

4.      Since February 2021, I have been an associate at Cooley LLP ("Cooley"), where I am a member of the business litigation practice group.  Prior to joining Cooley, I was an associate at a boutique law firm in New York, where I worked in that firm's commercial litigation practice group.

5.      On August 15, 2022, I will begin a clerkship with the Honorable Analisa Torres of the United States District Court for the Southern District of New York.

6.      I first became involved in Cooley's *pro bono* matter involving a potential challenge to Alabama's proposed legislation related to gender-affirming care for transgender youth in early 2022.  At that time, I understood from others on the Cooley team that Cooley had been working on the matter with Lambda Legal, the American Civil Liberties Union ("ACLU National"), and the American Civil Liberties Union of Alabama ("ACLU Alabama") for approximately one year.

7.      I was one of the most junior members of the Cooley team.  My primary role was to execute tasks assigned to me by more senior members of the team.  These tasks included conducting legal research, drafting one of the initial motions and supporting documents that were filed in the case, and gathering general information related to the case.

8.      **Topic 1.  With regard to the first topic identified in the Panel's July 8, 2022 Order, my participation in and knowledge of "[t]he actual or potential judicial assignments in *Ladinsky*, *Walker*, and/or *Eknes-Tucker*," are as follows:**

    a.  *Ladinsky*

        i.  I had no participation in any actual or potential judicial assignments in *Ladinsky*.  I did learn of actual judicial assignments in *Ladinsky* after those assignments occurred.  I do not recall having knowledge of potential judicial assignments in *Ladinsky*.

    b.  *Walker*

        i.  In early 2022, when I joined the Cooley team that was preparing to file the *Walker* case, I understood that Cooley and co-counsel were planning to file the case in the Middle District of Alabama. I recall that at some point, I learned that the intention of the group was to mark the case as related to a case that was before Judge

3

Thompson (*Corbitt v. Taylor*), who I learned was a district court judge in the Middle District of Alabama.  I came to understand that Judge Thompson's case also involved transgender rights, and the belief was that as a result, Judge Thompson would be most familiar with the issues in our case.  I also understood that Judge Thompson likely would be receptive to the *Walker* plaintiffs' claims and arguments.

ii.   I knew that the *Walker* complaint had been filed on or about April 11, 2022.  I also knew that a motion for a preliminary injunction and temporary restraining order was filed in the case.

iii.   On April 12, 2022, I spoke on the telephone with a clerk in the clerk's office for the Middle District of Alabama who asked that we file a motion to place the minor plaintiffs' names under seal. At that point, I believed a judge had not yet been assigned to the *Walker* case.  I assisted with drafting and filing a motion to seal the names of the minor plaintiffs.  I recall that at some point an attorney from Lambda Legal, Carl Charles, made a call to Judge Thompson's chambers to alert them about the relatedness designation and the preliminary injunction motion.

4

iv.   Later that day, I learned that our case had been assigned to Chief Judge Marks.  At some point that day, I also learned that we would need to file a motion to reassign the case to Judge Thompson, and not just mark *Walker* as related to *Corbitt* on the civil cover sheet. I proofread the motion to reassign but did not otherwise work on that motion.

v.    As described in more detail below, at some point after the motion to reassign the case was filed, I conducted some very limited research into Judge Thompson's practice for handling relatedness motions, which consisted of reaching out to former clerks for Judge Thompson.  I received no guidance from those calls as to how such motions are handled in Judge Thompson's chambers.

vi.   On April 13, 2022, I learned that Chief Judge Marks had issued an Order to Show Cause why the *Walker* case should not be transferred to the Northern District of Alabama, where the *Ladinsky* case was pending.  I recall that at some point, the State responded to our motion to reassign and the Order to Show Cause, but I do not recall the substance of the State's opposition.  I also recall that the *Walker* team then discussed whether we should oppose the transfer or not, but I do not recall specifics of those

5

discussions.  At some point, it was decided that we would not oppose the transfer, but I do not know specifically why that decision was made.

    vii.  On or about April 15, 2022, I learned that the *Walker* case had been assigned to Judge Burke of the Northern District of Alabama.  I recall that because he was a recent appointee by former President Trump, no one knew much about Judge Burke, and it was harder to research his judicial philosophy and prior rulings.  Based on what I learned through a quick web search, I got the impression that he would likely be less receptive to our client's legal claims, and I believed that other individuals on the *Walker* team shared that impression.

  c.  *Eknes-Tucker*

    i.  I have no knowledge of or participation in the actual or potential judicial assignments in *Eknes-Tucker*.

9.    **Topic 2.  With regard to the second topic identified in the Panel's July 8, 2022 Order, my participation in and knowledge of "[a]ny actions or decisions taken in the course of preparing to file *Ladinsky*, *Walker*, and/or *Eknes-Tucker* that relate to any actions or plans that were intended to cause, actually caused, or may have caused the assignment or reassignment to, or the**

6

**actual or potential recusal of, any judge in the Northern or Middle Districts of Alabama," are as follows:**

    a.  *Ladinsky*

        i.  I did not participate in, and have no knowledge of, any actions or decisions taken in the course of preparing to file *Ladinsky* that relate to any actions or plans that were intended to cause, actually caused, or may have caused the assignment or reassignment to, or the actual or potential recusal of, any judge in the Northern or Middle Districts of Alabama.

    b.  *Walker*

        i.  As described above, in early 2022, when I joined the team that was preparing to file the *Walker* case, I learned that *Walker* Counsel planned to file the lawsuit in the Middle District of Alabama and that the case would be marked as related to a Judge Thompson case. I understood that the reason for that decision was that Judge Thompson presided over another case involving transgender rights and therefore he would be most familiar with the issues in our case.

ii.   On April 11, 2022, I became aware that the *Walker* case was filed and that *Walker* Counsel marked the case as related to *Corbitt* on the civil cover sheet.

iii.   On or around April 12, 2022, I became aware that Carl Charles called Judge Thompson's chambers regarding the *Walker* case to alert them about the relatedness designation and the preliminary injunction motion.  I do not recall what Mr. Charles was told.  I did not participate in this phone call and have no additional knowledge regarding its substance.

iv.   I did not participate in, and have no knowledge of, any actions or decisions taken in the course of preparing to file *Walker* that were intended to cause, actually caused, or may have caused the actual or potential recusal of any judge in the Northern or Middle Districts of Alabama.

c.  *Eknes-Tucker*

i.   I did not participate in, and have no knowledge of, any actions or decisions taken in the course of preparing to file *Eknes-Tucker* that relate to any actions or plans that were intended to cause, actually caused, or may have caused the assignment or

reassignment to, or the actual or potential recusal of, any judge in the Northern or Middle Districts of Alabama.

10.  **Topic 3.  With regard to the third topic identified in the Panel's July 8, 2022 Order, my participation in and knowledge of "[a]ny action or decision that relates to which parties to name in *Ladinsky*, *Walker*, and/or *Eknes-Tucker*, where to file each action, and all the reasons related to any such decision about who to name and where to file," are as follows:**

a.  *Ladinsky*

i.  I did not participate in, and have no knowledge of, any action or decision that relates to which parties to name in *Ladinsky*, where to file the *Ladinsky* action, or the reasons related to any such decision about who to name and where to file.

b.  *Walker*

i.  I did not participate in any action or decision that relates to which parties to name *Walker*, where to file the *Walker* action, or the reasons related to any such decision about who to name and where to file.  With respect to my knowledge of the same, I recall that other team members and I received updates from co-counsel about whether the plaintiffs who had agreed to be plaintiffs in 2021 would be the plaintiffs in the lawsuit we were planning to

file in 2022, but I do not recall the details of those updates.  I also recall that when I joined the case in early 2022, the decision to file the complaint in the Middle District of Alabama had already been made.

   c. *Eknes-Tucker*

      i. I did not participate in, and have no knowledge of, any action or decision that relates to which parties to name in *Eknes-Tucker*, where to file the *Eknes-Tucker* action, or the reasons related to any such decision about who to name and where to file.

11. **Topic 4.  With regard to the fourth topic identified in the Panel's July 8, 2022 Order, my participation in and knowledge of "[a]ny action or decision that relates to attempts to associate other law firms or the actual association of other law firms to work with counsel in *Ladinsky*, *Walker*, and/or *Eknes-Tucker*," are as follows:**

   a. *Ladinsky*

      i. I did not participate in, and have no knowledge of, any action or decision that relates to attempts to associate other law firms or the actual association of other law firms to work with counsel in *Ladinsky*.

   b. *Walker*

      i.  In early 2022, when I started working on the matter, I became aware that Cooley planned to file a lawsuit with co-counsel at Lambda Legal, ACLU National, and ACLU Alabama.  Apart from this knowledge, I have no knowledge of, nor did I participate in, any action or decision that relates to attempts to associate other law firms or the actual association of other law firms to work with counsel in *Walker*.

  c.  *Eknes-Tucker*

      i.  I did not participate in, and have no knowledge of, any action or decision that relates to attempts to associate other law firms or the actual association of other law firms to work with counsel in *Eknes-Tucker*.

12.  **Topic 5.  With regard to the fifth topic identified in the Panel's July 8, 2022 Order, my participation and knowledge of "[a]ny action or decision that relate to coordination and/or dismissal of the *Ladinsky* and *Walker* cases and the reasons for dismissal," including "(1) the conference call that occurred on April 15, 2022 and (2) any other communications between *Ladinsky* counsel and *Walker* counsel on that topic," are as follows:**

  a.  After I joined the team that was preparing to file the *Walker* case in early 2022, I learned that there were other lawyers preparing to file a

separate lawsuit challenging the same Alabama legislation.  Once that separate lawsuit was filed (*Ladinsky*), *Walker* co-counsel provided me and other *Walker* Counsel with periodic updates about docket events in that case as they occurred.

b. I listened in on a call that took place on April 15, 2022 amongst *Walker* Counsel to discuss the potential dismissal of the *Walker* action.  I am also aware of a call that took place on April 15, 2022 between the *Walker* Counsel and the *Ladinsky* Counsel regarding dismissal, but I did not participate in the call.

c. I am also aware that on April 15, 2022, the *Walker* case was voluntarily dismissed pursuant to Rule 41 of the Federal Rules of Civil Procedure. However, I was not involved in the decision to dismiss the case.  My understanding is that *Walker* was voluntarily dismissed for a number of reasons, including confusion and/or concerns about (i) the manner in which the *Walker* case ended up before Judge Burke; (ii) the logistical challenges involved in participating in the status conference that Judge Burke had scheduled to take place on April 18, 2022; (iii) the ability of *Walker* Counsel to work cooperatively and effectively across organizations; and (iv) the ability of *Walker* Counsel and *Ladinsky* Counsel to work cooperatively and effectively across organizations.  I

12

also had the impression that Judge Burke would likely be less receptive to our client's legal claims and the arguments we planned to make, and I believed that other members of the *Walker* team shared that impression.

    d.   Other than the foregoing, I did not participate in, and have no knowledge of, any action or decision that relates to the coordination of the *Ladinsky* and *Walker* cases.

    e.   At some point I learned that the *Ladinsky* case had been dismissed, but I did not participate in, and have no knowledge of, any action or decision that relates to the dismissal of the *Ladinsky* case.

13.    **Topic 6.  With regard to the sixth topic identified in the Panel's July 8, 2022 Order,** I have no participation in or knowledge of "[a]ny and all actions that relate to the decision to file *Eknes-Tucker* in the United States District Court for the Middle District of Alabama."

14.    **Topic 7.  With regard to the seventh topic identified in the Panel's July 8, 2022 Order, my participation and knowledge relating to "(1) preparation for the hearing in this matter (including circulation of any Q&A document), and (2) the questions expected to be asked or that were actually asked by the court at the May 20, 2022 hearing," are as follows:**

a.  On May 10, 2022, co-counsel at Lambda Legal informed me and other attorneys on the Cooley team about the Panel's May 10, 2022 Order initiating this action.

b.  On May 11, 2022, I learned that Barry Ragsdale had been retained to represent me and other members of the Cooley team in connection with this action.  The following day, I learned that Russell Capone and others working at his direction would also be representing me and other members of the Cooley team in connection with this action.

c.  On May 15, 2022, I participated in a phone call with Mr. Capone and a separate teleconference with Mr. Capone and other members of the Cooley team about the May 20, 2022 hearing.  I recall discussing with Mr. Capone a potential application for me to be excused from participating in the May 20, 2022 hearing due to a pre-scheduled medical procedure on that day.

d.  On May 18, 2022, I was notified by Mr. Capone that I would be excused from participating in the May 20, 2022 hearing in this action due to the pre-scheduled medical procedure.  On the same day, I reviewed a copy of the *Walker* Counsel's pre-hearing brief that was submitted to the Panel.

  e. On May 19, 2022, I participated in a teleconference with *Walker* Counsel and our attorneys, Mr. Ragsdale, and Mr. Capone.  I recall that the subjects included the standard for voluntary dismissal under Rule 41 of the Federal Rules of Civil Procedure and the role of the attorney-client privilege at the May 20, 2022 hearing.

  f. At some point during the May 19, 2022 teleconference, co-counsel shared electronically a "Q&A document" with all *Walker* Counsel.  The document included some potential topics that we expected might be discussed at the May 20, 2022 hearing, but I do not recall the specifics of that document.  I did not review the document in detail, because I had been excused from attending the hearing.

  g. I have no knowledge of the questions that were actually asked by the Panel or the Special Master at the May 20, 2022 hearing.

15. **Topic 8.  With regard to the eighth topic identified in the Panel's July 8, 2022 Order, my knowledge of "[t]he identity of each attorney, not included in the style of the original order . . . involved in any input, recommendation, decision, or strategy regarding any of the subjects referenced above and the details of each such person's involvement," is as follows:**

  a. On April 13, 2022, I identified through web searches a former Judge Thompson clerk who, like me, had attended Yale Law School.  I

contacted the former clerk through email and asked how Judge Thompson usually approaches motions to mark cases as related and the process by which such motions are handled in the Middle District of Alabama.  The former clerk did not recall ever receiving such a motion while working for Judge Thompson.

b. On the same day, I separately contacted two former law school classmates and asked if they knew anyone who had clerked for Judge Thompson.   One of my former classmates knew a former Judge Thompson clerk and relayed my question about how Judge Thompson usually approaches motions to mark cases as related.  According to my former classmate, the former clerk did not recall receiving such a motion while working for Judge Thompson.  I did not communicate directly with this former clerk.

16.     With respect to the Panel's directive that I attest to my compliance with the July 8, 2022 Order and to affirmatively indicate any non-compliance:  I have complied with the Panel's July 8, 2022 Order as modified by the Panel's July 25, 2022 Order.

* * *

16

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing statements are true and correct to the best of my knowledge, information, and belief.

Dated: New York, New York
       July 27, 2022

_____
Valeria M. Pelet del Toro

17

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 27, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will give notice of such filing to all counsel of record.


_/s/ Barry A. Ragsdale_____
OF COUNSEL