**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**

|  |  |  |
|---|---|---|
| *In re* **Amie Adelia Vague**, *et al.* | } } } | **Case No. 2:22-mc-03977-WKW** |

## DECLARATION OF KATHLEEN HARTNETT PURSUANT TO JULY 8, 2022 ORDER

I, Kathleen Hartnett, declare:

1.      I submit this Declaration pursuant to the Panel's July 8, 2022 Order in this matter.

2.      The matters stated herein are based upon my personal knowledge and are true to the best of my knowledge.  To the extent information provided in response to one of the Panel's questions is responsive to other questions, I have attempted to repeat that information, but the information provided below should be considered as being provided in response to all questions as necessary, notwithstanding that it is provided in response to a specific question.  In addition, in some instances I provide

1

information as context for my response rather than in direct response to the Panel's question.[1]

3.    I am a partner at the Cooley LLP law firm in San Francisco, California. I have been at Cooley since 2020.  My primary practice is focused on complex civil and appellate litigation for corporate clients in federal and state courts throughout the country.  I also spend considerable time litigating and supervising cases *pro bono* for indigent clients and for non-profit organizations with interests in various civil rights matters around the country.

4.    I earned my Juris Doctorate from Harvard Law School in 2000, after which I clerked for Judge Merrick Garland of the United States Court of Appeals for the D.C. Circuit and for United States Supreme Court Justice John Paul Stevens.

5.    After clerking, I joined a national law firm in Washington, D.C. as an associate with a focus on appellate and constitutional law. In 2006, I co-founded a Washington, D.C. litigation boutique, where I litigated commercial disputes and represented nationwide classes of antitrust and consumer protection plaintiffs.

---

[1] Pursuant to and in compliance with the Panel's July 25, 2022 Order, I have not disclosed any attorney-client communications in this declaration.  Moreover, by submitting this declaration, I do not intend to waive the attorney work product protection as to any materials or communications disclosed herein.

6.      In 2010, I left my firm to serve as special assistant and associate counsel to President Barack Obama, and continued in that role until 2013.

7.      In 2013, I joined the United States Department of Justice Civil Division, where I served as Deputy Assistant Attorney General. In that role, I oversaw the Federal Programs Branch, which litigates challenges to federal actions across the country.

8.      After my government service, I returned to private practice in 2016 at the law firm Boies Schiller Flexner LLP in San Francisco, where I was a partner until 2020, when I joined Cooley.

9.      I was selected in 2020 by the judges of the Northern District of California to be a lawyer representative and was selected by the judges to be co-chair of the lawyer representatives for 2022-2023.

10.     I am admitted to practice law in California, the District of Columbia, and New York.  I am in good standing in each of those jurisdictions.

11.     As background for all of the responses below, I first became involved in plans to file a legal challenge to proposed legislation in Alabama that would criminalize the provision of gender-affirming care to transgender youth in March 2021.  At that time, Cooley began working on a *pro bono* basis with several non-profit organizations—Lambda Legal ("Lambda"), the American Civil Liberties Union ("ACLU National"), and the American Civil Liberties Union of Alabama (the

"ACLU of Alabama")—who had been preparing to challenge the companion bills, House Bill 1 and Senate Bill 10, which were then pending in the Alabama legislature. I and others at Cooley had partnered with Lambda and ACLU National before, including to challenge various laws aimed at transgender people in other states, and we had an ongoing relationship with those organizations. At that time, I had an understanding from conversations with lawyers at Lambda and ACLU National that there were other groups also considering challenges to the two laws, but I was not in contact with those other groups regarding these potential challenges.

12.     In March, April, and May of 2021, I supervised Cooley associates in helping to draft the *Walker* complaint and a motion for a preliminary injunction and temporary restraining order.   However, the bills that we were anticipating challenging did not pass the Alabama legislature at that time, and so Cooley paused its work on the complaint and the motion.

13.     When the threat of similar bills in Alabama resumed in early 2022, the Cooley team and I resumed our work in *Walker* starting in early February 2022, again alongside Lambda, ACLU National, ACLU of Alabama, and, eventually, the Transgender Law Center.  As explained further below in response to **Topic 5**, and as context for my responses to all of these questions, at no time before my communications with *Ladinsky* Counsel on April 15, 2022 regarding potentially consolidating our cases in the Northern District of Alabama and then potentially

dismissing our cases did I view *Walker* Counsel as "coordinating" with *Ladinsky* Counsel.  Rather, before that day, I understood that another counsel group (which I came to know as *Ladinsky* Counsel) were likely to, and then in fact did, file a challenge to a transgender youth healthcare ban.  I had minimal interactions with that other counsel group in 2022 and I had no expectation when filing *Walker* that our case would be consolidated with or litigated in coordination with *Ladinsky*.  To the contrary, my understanding was that the two groups would seek to maintain separate cases, including because the groups were unlikely to work well together given various history and experiences between certain individuals in the different counsel groups (none involving Cooley).

14.   **Topic 1.  With regard to the first topic identified in the Panel's July 8, 2022 Order, my participation in and knowledge of "[t]he actual or potential judicial assignments in *Ladinsky*, *Walker*, and/or *Eknes-Tucker*," are as follows:** *Ladinsky*

- I did not have any participation in the actual or potential judicial assignments in *Ladinsky* but I did learn of them as the *Ladinsky* case received such assignments.

- Before the *Ladinsky* case was filed, I knew that a group I would later know as *Ladinsky* Counsel intended to file in the Northern District of Alabama.

- On or around April 11, 2022, I learned from co-counsel on the *Walker* case that various organizations, including the National Center for Lesbian Rights ("NCLR"), GLBTQ Legal Advocates & Defenders ("GLAD"), Southern Poverty Law Center ("SPLC"), and Human Rights Campaign ("HRC"), as well as two law firms (collectively, *Ladinsky* Counsel), had in fact filed a case in the Northern District of Alabama called *Ladinsky* and that the *Ladinsky* case had been assigned to Judge Manasco.  Later that same day, I learned from *Walker* co-counsel that Judge Manasco recused herself from the *Ladinsky* case.

- On April 14, 2022, I learned from co-counsel in *Walker* that the *Ladinsky* case had been reassigned to Judge Axon in the Northern District of Alabama.

- On April 15, 2022, as discussed more fully below, I learned that the *Ladinsky* case had been reassigned to Judge Burke in the Northern District of Alabama.

*Walker*

- When Cooley joined the team that was preparing to file the *Walker* case in March 2021, I understood from attorneys from Lambda, the ACLU of Alabama, and ACLU National that they were inclined to file their lawsuit in the Middle District of Alabama (where at least one likely plaintiff family

resided, where the district attorney for that plaintiff family's county resided, and where the Attorney General of Alabama resided) and to mark the case as related to *Corbitt v. Taylor*, an action that was before Judge Thompson of the Middle District of Alabama and with which ACLU National and ACLU of Alabama were familiar because they serve as counsel in *Corbitt*.

- My understanding was that my co-counsel wanted to be before Judge Thompson because he was expected to be receptive to our factual and legal claims, as he had been regarding similar legal claims in *Corbitt*, which involves Equal Protection and Due Process challenges to an Alabama law limiting transgender individuals' rights.  I also understood from co-counsel that the cases were related because they involved overlapping legal and factual issues.  I also understood *Corbitt* was on appeal before the Eleventh Circuit Court of Appeals and was expected to be remanded back to Judge Thompson for, at a minimum, resolution of an attorneys' fee motion.

- Soon after Cooley joined the case in March 2021, Cooley associates under my supervision conducted a review of the judges in the Middle District of Alabama and the Northern District of Alabama that could possibly be assigned to the case. The same team of associates reviewed the process for marking the case as related, the standard for considering a case related in

the Middle District and how an opposing counsel would object to the marking of a case as related.  The purpose of the review was to confirm the strategy of filing the case in the Middle District and marking the case as related.

- Ultimately, I concurred in the plan to file the case in the Middle District of Alabama and relate the case to Judge Thompson by checking a box on the civil cover sheet. Our belief at the time was that as a result of checking the box on the civil cover sheet for related cases, the case would then be sent to Judge Thompson to decide whether the case was sufficiently related to accept the case.  We were not aware of any requirement in the Middle District of Alabama to file a motion to relate or reassign in order to perfect our relatedness designation on the civil cover sheet, and our review of the Middle District rules did not indicate any such process.  I believed that because there was no clear guidance on the standard for relating a case in the Middle District of Alabama, we had a reasonable basis for marking our case as related to *Corbitt* and, if the State opposed our marking the case as related, we might not be successful.

- I intended to litigate our challenge in the Middle District of Alabama regardless of whether Judge Thompson ultimately was assigned to the case.

8

- The strategy described in the preceding bullets regarding filing in the Middle District and marking our case as related to *Corbitt* is the strategy we continued to pursue when the possibility of filing this case arose again in March 2022.

- On April 11, 2022, I supervised the Cooley team in finalizing the *Walker* complaint with our co-counsel, and Cooley and our co-counsel filed the *Walker* action in the Middle District of Alabama.  As explained above, I understood that the proper way to have a case deemed related was to mark the civil cover sheet to indicate that the *Walker* case was related to the *Corbitt* case, which is what we did. We reviewed the Middle District of Alabama local rules and there was no indication that we had to file a motion to relate or reassign in order to perfect a relatedness designation. I also expected, based on my discussions with *Walker* co-counsel, that the case initially would be assigned to Judge Thompson for a relatedness determination because we had marked the case as related to *Corbitt*.

- On April 12, 2022, it was initially unclear to me whether our case had yet been formally assigned to a judge.  My understanding from our team's reporting of communications with the Middle District of Alabama's Clerk's Office is that we needed to file a Local Rule 5.2 motion (redacting personal identifiers) before receiving a case number.  Because *Walker*

Counsel expected that our case initially would be with Judge Thompson due to the relatedness designation, one of our *Walker* team members contacted Judge Thompson's chambers on April 12, 2022 and advised that we were preparing to file a motion for a temporary restraining order and/or preliminary injunction.  In my experience, it is typical to alert a judge's chambers when a motion for a temporary restraining order is forthcoming.

- Only after that call to Judge Thompson's chambers on April 12, 2022, did *Walker* Counsel learn that our case had been assigned to Chief Judge Marks of the Middle District of Alabama. I checked PACER, which indicated that we were assigned to Chief Judge Marks and an associate on the Cooley team also called the office of the Clerk of the Court and received confirmation that Chief Judge Marks had been assigned the case. The associate also reported that the Clerk's Office said that in order for a judge to have the opportunity to consider the case as related, we would have to file a motion with the currently assigned judge (Chief Judge Marks) to relate our case to *Corbitt*.  Therefore, I supervised Cooley associates in drafting a motion to reassign the *Walker* case to Judge Thompson as related to the *Corbitt* case, in order to perfect our relatedness designation on the civil cover sheet. *Walker* Counsel (including me) agreed

to file that motion, and it was filed during the early evening of April 12, 2022.

- On April 13, 2022, I learned that Chief Judge Marks had issued an order to show cause why the *Walker* case should not be transferred to the Northern District of Alabama so that it could be decided with the first-filed *Ladinsky* case. Between April 13, 2022 and April 14, 2022, I and other *Walker* Counsel were considering a response to the order to show cause, including whether to respond by arguing that the case should remain in the Middle District and reassigned to Judge Thompson or to agree to have the case transferred to the Northern District of Alabama.

- I understand that later on April 13, 2022, in light of the show cause order and potential transfer, some *Walker* Counsel, including a Cooley associate, and some *Ladinsky* Counsel had a phone call to discuss the response to the order to show cause and potential transfer and consolidation.  At the time of this call, *Walker* Counsel intended to oppose consolidation and seek reassignment to Judge Thompson.  I was not present on that call because I was in a deposition on another matter that day.

- On April 14, 2022, the State of Alabama filed a response to the order to show cause and to the *Walker* motion to reassign the case to Judge Thompson.  In its response to the motion to reassign, as one reason that the

11

case should not be reassigned to Judge Thompson, the State noted that the *Corbitt* case was denoted "closed" on the District Court docket.  That was when I realized that *Corbitt* was marked "closed" on the docket, though I believed it was still pending on appeal; the State's brief did not mention the appeal status, and thus, upon reading the State's brief I thought I could be wrong and that the case may have been finally resolved.  Upon further discussion and continued research after receiving the State's filings, I realized that the *Corbitt* appeal was in fact still pending.  However, given the State's response briefs and, in light of Judge Marks' order to show cause, the likelihood we would be transferred to the Northern District regardless of our response to the order to show cause, I and the other *Walker* decision-makers determined that the appropriate course of action was to agree to have the case transferred to the Northern District of Alabama, where the *Ladinsky* case had been filed.  At that time, I knew that the *Ladinsky* case had been assigned to Judge Axon.

- On April 14, 2022, *Walker* Counsel filed a response to Chief Judge Marks' order to show cause by explaining that although *Walker* was properly filed in the Middle District, the *Walker* Plaintiffs did not oppose transfer to the Northern District to be adjudicated alongside *Ladinsky*.  At that point, I

12

expected the case to be transferred to Judge Axon of the Northern District of Alabama, because Judge Axon was presiding over *Ladinsky*.

- On the morning of the April 15, 2022, Chief Judge Marks transferred the *Walker* case to the Northern District of Alabama, where it was assigned to Judge Burke.

- Please see my response to **Topic 5** below for a detailed description of the events of April 15, 2022, including the potential and actual assignment and reassignment of *Walker* within the Northern District.  As that response explains, after *Walker* was assigned to Judge Burke on April 15, 2022, efforts were made on April 15, 2022 by the Office of the Alabama Attorney General, *Ladinsky* Counsel, and *Walker* Counsel to consolidate the two cases before Judge Axon through a motion for consolidation to be filed with Judge Axon in *Ladinsky*.  Ultimately, the plan was for the Attorney General to file the motion to consolidate in *Ladinsky* and represent that *Ladinsky* Counsel and *Walker* Counsel consented to it.

- While I was on the phone with the Attorney General's office discussing that motion, however, Judge Axon transferred *Ladinsky* to Judge Burke. As a result of that transfer of *Ladinsky* to Judge Burke, the Attorney General ceased its plan to file a motion for consolidation before Judge Axon.

*Eknes-Tucker*

- At some point in time after April 19, 2022, I became aware from press coverage that *Ladinsky* Counsel had filed the *Eknes-Tucker* case in the Middle District of Alabama, where it was assigned to Judge Huffaker of the Middle District of Alabama.

- At some point, I also became aware that the *Eknes-Tucker* case was transferred to Judge Burke in the Northern District of Alabama.

15.    **Topic 2.  With regard to the second topic identified in the Panel's July 8, 2022 Order, my participation in and knowledge of "[a]ny actions or decisions taken in the course of preparing to file *Ladinsky*, *Walker*, and/or *Eknes-Tucker* that relate to any actions or plans that were intended to cause, actually caused, or may have caused the assignment or reassignment to, or the actual or potential recusal of, any judge in the Northern or Middle Districts of Alabama," are as follows:**

*Ladinsky*

- I have no knowledge of or participation in any actions or decisions taken in the course of preparing to file *Ladinsky* that relate to any actions or plans that were intended to cause, actually caused, or may have caused the assignment or reassignment to, or the actual or potential recusal of, any judge in the Northern or Middle Districts of Alabama.  I did know that the

14

*Ladinsky* Counsel intended to file their case in the Northern District of Alabama.

*Walker*

- I have no knowledge of or participation in any actions or decisions taken in the course of preparing to file *Walker* that were intended to cause, actually caused, or may have caused the actual or potential recusal of any judge in the Northern or Middle Districts of Alabama.

- With respect to actions or decisions taken in the course of preparing to file *Walker* that were intended to cause, actually caused, or may have caused the assignment or reassignment to any judge in the Northern or Middle Districts of Alabama, as described above in response to **Topic 1**, when I joined the team that was preparing to file the *Walker* case in March 2021, I understood that *Walker* Counsel from Lambda, the ACLU of Alabama, and ACLU National were inclined to file their lawsuit in the Middle District of Alabama (where at least one likely plaintiff family resided, where the district attorney for that plaintiff family's county resided, and where the Attorney General of Alabama resided) and to mark the case as related to *Corbitt*, a case presided over by Judge Thompson.

- As explained above in response to **Topic 1**, which I incorporate by reference here, my understanding was that my co-counsel wanted to be

before Judge Thompson because he was expected to be receptive to our factual and legal claims, as he had been regarding similar legal claims in *Corbitt*, which involves Equal Protection and Due Process challenges to an Alabama law limiting transgender individuals' rights. I also understood from co-counsel that the cases were related because they involved overlapping legal and factual issues. I also understood that *Corbitt* was on appeal before the Eleventh Circuit Court of Appeals and was expected to be remanded back to Judge Thompson for, at a minimum, resolution of an attorneys' fee motion.

- As discussed above, in or around March 2021, I supervised Cooley associates who researched the process for marking a case as related in the Middle District of Alabama. That research confirmed that there was no specific authority in the Middle District of Alabama as to what constitutes a related case. Nor was there any procedure set forth for filing a motion to relate or motion to reassign to perfect a relatedness designation. Ultimately, upon discussion and in the absence of clear guidance, as described more fully in response to **Topic 1** above, I and the other decision-makers concurred that it was reasonable to mark the *Walker* case as related to the *Corbitt* case given the overlap in the legal and factual issues between the cases.

16

- Our strategic thinking and research from 2021 informed how we proceeded in 2022. On April 11, 2022, when we filed the *Walker* case, *Walker* Counsel marked the case as related to *Corbitt* on the civil cover sheet.

*Eknes-Tucker*

- Before *Eknes-Tucker* was filed, or even conceived (to my knowledge), I had preliminary conversations with *Ladinsky* Counsel on April 15, 2022 prior to the voluntary dismissal of *Walker* and *Ladinsky* about the possibility of refiling a single, coordinated lawsuit including both *Ladinsky* Counsel and *Walker* Counsel. On the morning of April 16, 2022, as more fully described in response to **Topic 5** below, there was a call between certain representatives of *Walker* Counsel and *Ladinsky* Counsel about potential collaboration on a refiled lawsuit, but I was not invited to and did not participate in that call. By the end of the day on April 16, 2022, Cooley had withdrawn from participating in any new or refiled lawsuit. Thus, I have no knowledge of or participation in any actions or decisions taken by *Ladinsky* Counsel in the course of preparing to file *Eknes-Tucker* that relate to any actions or plans that were intended to cause, actually caused, or may have caused the assignment or reassignment to, or the actual or potential recusal of, any judge in the Northern or Middle Districts of Alabama.

16.    **Topic 3.  With regard to the third topic identified in the Panel's July 8, 2022 Order, my participation in and knowledge of "[a]ny action or decision that relates to which parties to name in *Ladinsky*, *Walker*, and/or *Eknes-Tucker*, where to file each action, and all the reasons related to any such decision about who to name and where to file," are as follows:**

*Ladinsky*

- I have no knowledge of or participation in any action or decision that relates to which parties to name in *Ladinsky*, where to file the *Ladinsky* action, or the reasons related to any such decision about who to name and where to file.

*Walker*

- As described above in my responses to **Topic 1** and **Topic 2**, which I incorporate by reference here, when I joined the team that was preparing to file the *Walker* case in March 2021, I understood that *Walker* Counsel from Lambda, the ACLU of Alabama, and ACLU National were inclined to file their lawsuit in the Middle District of Alabama (where at least one likely plaintiff family resided, where the district attorney for that plaintiff family's county resided, and where the Attorney General of Alabama resided) and to mark the case as related to *Corbitt v. Taylor*, an action that was before Judge Thompson of the Middle District of Alabama.

- As also explained in my above responses, my understanding was that my co-counsel wanted to be before Judge Thompson because he was expected to be receptive to our factual and legal claims, as he had been regarding similar legal claims in *Corbitt*, which involves Equal Protection and Due Process challenges to an Alabama law limiting transgender individuals' rights.   I also understood from co-counsel that the cases were related because they involved overlapping legal and factual issues.   I also understood that *Corbitt* was on appeal before the Eleventh Circuit Court of Appeals and was expected to be remanded back to Judge Thompson for, at a minimum, resolution of an attorneys' fee motion.

- As also discussed in my above responses, in or around March 2021, I supervised Cooley associates who researched the process for marking a case as related in the Middle District of Alabama. That research confirmed that there was no specific authority in the Middle District of Alabama as to what constitutes a related case.  Nor was there any procedure set forth for filing a motion to relate or motion to reassign to perfect a relatedness designation.  Ultimately, upon discussion and in the absence of clear guidance, as described more fully above, I and the other decision-makers concurred that it was reasonable to mark the *Walker* case as related to the

19

*Corbitt* case given the overlap in the legal and factual issues between the cases.

- Our strategic thinking and research from 2021 informed how we proceeded in 2022.  On April 11, 2022, we filed the *Walker* case in the Middle District of Alabama and marked the case as related to *Corbitt* on the civil cover sheet.

- I was not directly involved with but have general knowledge of the decision to name Jeffrey Walker, Lisa Walker, H.W., Jeffrey White, Christa White, and C.W. as plaintiffs in the *Walker* action.  Those individuals were prepared to bring suit in 2021 had the Alabama transgender youth healthcare ban passed in 2021, and they remained interested in bringing suit in 2022 when the ban passed in 2022, which is why they were named as plaintiffs.  The plaintiffs resided in the Middle and Northern Districts of Alabama, respectively.  To my knowledge, their district of residence was not the reason they were plaintiffs.  *Walker* Counsel named as defendants the district attorneys for the counties in which the plaintiff families resided and the Attorney General of Alabama, as those officials would be responsible for enforcing the challenged law against plaintiffs.

- *Walker* Counsel also considered adding an additional family as plaintiffs in the *Walker* case, but did not ultimately do so. That decision was based on facts particular to the family (including the age of the child, the child's health history, and family dynamics) that *Walker* Counsel believed created concerns about whether the plaintiff was representative of the type of plaintiff who we thought should be bringing the challenge, and was unrelated to any considerations regarding the venue in which the case was filed.

*Eknes-Tucker*

- As noted above, before *Eknes-Tucker* was filed, or even conceived to my knowledge, I had preliminary conversations with *Ladinsky* Counsel on April 15, 2022 prior to the voluntary dismissal of *Walker* and *Ladinsky* about the possibility of refiling a single, coordinated lawsuit including both *Ladinsky* Counsel and *Walker* Counsel. On the morning of April 16, 2022, as more fully described in response to **Topic 5** below, there was a call between certain representatives of *Walker* Counsel and *Ladinsky* Counsel about potential collaboration on a refiled lawsuit, but I was not invited to and did not participate in that call. By the end of the day on April 16, 2022, Cooley had withdrawn from participating in any new or refiled lawsuit. Thus, other than those preliminary conversations, I have no knowledge of

21

or participation in any action or decision by *Ladinsky* Counsel that relates to which parties to name in *Eknes-Tucker*, where to file the *Eknes-Tucker* action, or the reasons related to any such decision about who to name and where to file.

17.   **Topic 4.  With regard to the fourth topic identified in the Panel's July 8, 2022 Order,** I have no participation in or knowledge of "[a]ny action or decision that relates to attempts to associate other law firms or the actual association of other law firms to work with counsel in *Ladinsky*, *Walker*, and/or *Eknes-Tucker*."

18.   **Topic 5.  With regard to the fifth topic identified in the Panel's July 8, 2022 Order, my participation in or knowledge of "[a]ny and all actions or decisions that relate to coordination and/or dismissal of the *Ladinsky* and *Walker* cases and the reasons for dismissal, including but not limited to (1) the conference call that occurred on April 15, 2022 and (2) any other communications between *Ladinsky* counsel and *Walker* counsel on that topic" is as follows:**

- At no time before my communications with *Ladinsky* Counsel on April 15, 2022 regarding potentially consolidating our cases in the Northern District of Alabama, and then potentially dismissing our cases, did I view *Walker* Counsel as "coordinating" with *Ladinsky* Counsel. Rather, before that day, I had minimal interactions with the other counsel group and I had no plan

whatsoever for *Walker* to be consolidated with *Ladinsky*.  To the contrary, my understanding was that the two groups would seek to maintain separate cases, including because the groups were unlikely to work well together given various history and experiences between certain individuals in the different counsel groups (none involving Cooley).

- Among other things, I was not even aware that *Ladinsky* Counsel had filed its case in the Northern District of Alabama on April 8, 2022 until Monday, April 11, 2022 (the date we were planning to and did file our complaint in *Walker*).

- I generally understood from my *Walker* co-counsel, both in 2021 (while litigation was being prepared if the transgender youth healthcare ban passed) and in 2022 (in advance of our filing *Walker*) that there were two groups of counsel who represented different plaintiffs in Alabama, and who were interested in challenging the law if it passed, and that our group was likely to file in the Middle District of Alabama and the "other group" (which I came to know as *Ladinsky* Counsel) was likely to file in the Northern District of Alabama.  I did not directly interact with anyone from *Ladinsky* Counsel about the Alabama litigation in 2021 or in advance of our filing *Walker* in 2022, other than being copied on the emails described below.

- On March 3, 2022, I learned from an attorney at Lambda Legal that *Ladinsky* Counsel were planning to file suit in the Northern District of Alabama if the transgender youth healthcare ban passed.

- On April 7, 2022 (the day the Alabama Legislature passed the transgender youth healthcare ban), an attorney from the Southern Poverty Law Center who was a member of the *Ladinsky* team emailed an attorney from Lambda Legal regarding a press release that *Ladinsky* Counsel had issued announcing their plans to challenge the Alabama law regarding the provision of healthcare to transgender youth and the Lambda Legal and Southern Poverty Law Center lawyers also briefly referenced the experts they intended to use in challenging the law. The *Ladinsky* attorney asked if *Walker* Counsel would agree to a common interest agreement in principle, and I confirmed to co-counsel on the *Walker* team that Cooley would agree to a common interest agreement.

- On April 8, 2022 (the day Governor Ivey signed the transgender youth healthcare ban into law), an attorney from Lambda Legal emailed certain members of the *Ladinsky* and *Walker* teams, subject to the common interest agreement reached the day before, to report on a call that the Lambda Legal attorney had received from an attorney at the U.S. Department of Justice ("DOJ"). The DOJ attorney was seeking an update

24

on the civil rights groups' plans to challenge the law and to indicate DOJ's interest in potentially becoming involved in the litigation.  I was not part of any communications between *Walker* Counsel and DOJ before *Walker* and *Ladinsky* were voluntarily dismissed on April 15, 2022 and have not personally spoken to any DOJ representative about this matter.  I understand that on April 14, 2022, representatives from *Walker* Counsel were contacted by DOJ regarding DOJ's potential involvement in *Walker* and/or *Ladinsky*, and that DOJ had not yet decided how to proceed.

- On April 11, 2022, I understand that an attorney from the *Ladinsky* team reached out to *Walker* Counsel to inquire about our judge assignment and to inform *Walker* Counsel that the judge to whom *Ladinsky* was initially assigned had recused herself.  I considered this communication to be informational in nature and not to constitute coordination between *Walker* and *Ladinsky* Counsel—who, again, preferred *not* to be joined together in a single lawsuit.  That same day, someone who apparently wanted to join the *Ladinsky* case reached out to me, and I connected them via email with one of the *Ladinsky* attorneys.

- My co-counsel communicated with the attorney from the *Ladinsky* team on April 12, 2022 concerning judge assignments, again, in an

informational manner, and informed *Walker* Counsel of these communications.

- On April 13, 2022, Chief Judge Marks issued an order to show cause as to why *Walker* should not be transferred to the Northern District for decision with the first-filed case, *Ladinsky*, indicating the potential for the *Walker* and *Ladinsky* cases to be consolidated.  On April 13, 2022, a member of the *Walker* team alerted a member of the *Ladinsky* team to this order and our planned response, and I understand that later on April 13, 2022, in light of the show cause order and potential transfer, some *Walker* Counsel, including a Cooley associate, and some *Ladinsky* Counsel had a phone call to discuss the response to the order to show cause and potential transfer and consolidation.  However, at the time of this call, Walker Counsel intended to oppose consolidation and seek reassignment to Judge Thompson.  I was not present on that call because I was in a deposition on another matter that day.

- As discussed above, on April 14, 2022, *Walker* Counsel responded to Chief Judge Marks' order to show cause by explaining that although *Walker* was properly filed in the Middle District, the *Walker* Plaintiffs did not oppose transfer to the Northern District to be adjudicated alongside *Ladinsky*.

- On April 15, 2022, at around 9:45 AM CT, I learned that the *Walker* case had been transferred to the Northern District of Alabama.

- On April 15, 2022, at around 10:30 AM CT, I learned that the *Walker* case had been assigned to Judge Burke in the Northern District of Alabama.

- On April 15, 2022, at around 11:30 AM CT, I learned from a Cooley associate, who had contacted the Northern District of Alabama Clerk's Office, that to formally consolidate the *Walker* case with the *Ladinsky* case, *Ladinsky* Counsel would need to file a motion for consolidation before Judge Axon.

- On April 15, 2022, at around 2:00 PM CT, I and other representatives of *Walker* Counsel participated in a call with representatives of *Ladinsky* Counsel where we discussed filing a motion to consolidate our cases in *Ladinsky* and potential coordination of our strategies going forward.  We did not discuss dismissal of the *Walker* or *Ladinsky* cases on this call, and, to my knowledge, neither *Walker* nor *Ladinsky* Counsel was considering dismissal at that time.

- After that call, *Walker* Counsel and *Ladinsky* Counsel exchanged emails regarding a motion for consolidation, which *Walker* Counsel drafted and which *Ladinsky* Counsel planned to file before Judge Axon.

- As *Ladinsky* Counsel was preparing to file the motion for consolidation, I learned from *Ladinsky* Counsel that, rather than *Ladinsky* Counsel filing the motion to consolidate, the State was planning to file a motion in *Ladinsky* to consolidate *Walker* with *Ladinsky* before Judge Axon. At that time, I understood that *Ladinsky* Counsel was planning to consent to the State's motion to consolidate.

- On April 15, 2022, around 4:00 PM CT, Judge Burke set a status conference in *Walker* for the morning of Monday, April 18, 2022.  April 15, 2022 was the beginning of Passover and Easter was April 17, 2022.

- On April 15, 2022, around 4:45 PM CT, I called and spoke with counsel in the Alabama Attorney General's Office, both to confirm their plan for filing the motion to consolidate before Judge Axon in *Ladinsky* (which I understood they were going to file imminently) and to discuss how to inform Judge Burke about the consolidation motion, given that he had set a status conference in *Walker* for Monday morning.

- While I was still on that phone call with counsel in the Alabama Attorney General's Office, they informed me that Judge Axon had just issued an order transferring *Ladinsky* to Judge Burke.  Counsel in the Alabama Attorney General's Office then indicated to me on that same phone call that they would no longer be filing a motion to consolidate before Judge

Axon.  I reported this information back to counsel in both *Ladinsky* and *Walker*, in light of our discussions that day about consolidating our cases before Judge Axon.

- After completing my call with the Alabama Attorney General's Office, the *Walker* team began discussing possible voluntary dismissal.

- On April 15, 2022, around 5:00 PM CT, I had a brief call with an attorney on the *Ladinsky* team where *Ladinsky* Counsel indicated that they were considering dismissing their case. I indicated that *Walker* Counsel was also separately considering dismissal.

- At the time—a Friday evening before a holiday weekend, with a status conference now certain to take place on Monday morning—I believed that dismissing immediately was the best course of action for several reasons. Prior to the transfer of *Ladinsky* to Judge Burke, I had assumed the cases would be consolidated before Judge Axon and that the Monday status conference that Judge Burke had ordered would not take place.  When *Ladinsky* was transferred to Judge Burke, I realized the Monday status conference would take place and was concerned about *Walker* Counsel's inability to have senior lawyers on the team admitted *pro hac vice* and otherwise able to travel from around the country to participate in what I thought could become a substantive discussion of the case.  Additionally,

over the past several days of active litigation, I grew to have serious questions about the capacity of our sole local counsel to handle this matter on her own.   I also was concerned about *Walker* Counsel's ability to adequately coordinate with *Ladinsky* Counsel regarding strategy in advance of the April 18 status conference (including because the teams had *not* been coordinating to date and had differences in strategy, as well as past challenges working together on litigation).   Additionally, I had concerns about the sudden, unexpected, and unexplained assignment of both *Walker* and *Ladinsky* to Judge Burke, whom I did not know and had not personally researched, but about whom others had expressed significant concern.   Additionally, I believed it was necessary to dismiss immediately because were the State to answer before we dismissed, we would lose our unilateral right to dismiss voluntarily under Federal Rule of Civil Procedure 41.

- On April 15, 2022, between 5:00 PM CT and 6:00 PM CT, the *Walker* team decided to dismiss its case.   The *Walker* team made this decision independently from the *Ladinsky* team, but as part of this decision considered that the *Ladinsky* team also was contemplating dismissal and was likely to dismiss.   During that time, I had communications with members of the *Ladinsky* team to inform them of the *Walker* team's intent

to voluntarily dismiss *Walker* and to confirm the *Ladinsky* team's intended course, which I learned was also to voluntarily dismiss their case.

- Before we dismissed, I had brief, preliminary conversations on April 15, 2022 with *Ladinsky* Counsel about *Walker* Counsel and *Ladinsky* Counsel refiling a single coordinated lawsuit.  We agreed to defer any further discussion until the weekend.

- Prior to filing their notices of voluntary dismissal, the *Walker* and *Ladinsky* teams coordinated with one another regarding the logistics of dismissing both cases.  At that time, *Walker* Counsel planned to dismiss the *Walker* case simultaneously with the dismissal of the *Ladinsky* case and to coordinate with *Ladinsky* Counsel over the weekend about possibly filing a consolidated suit.

- At around 6:24 PM CT on April 15, 2022, *Walker* Counsel filed a notice of voluntary dismissal of the *Walker* case.  Shortly thereafter, at around 6:33 PM CT, *Ladinsky* Counsel informed *Walker* Counsel that they had filed a notice of voluntary dismissal of the *Ladinsky* case.

- On April 16, 2022, I understand that senior members of the *Walker* and *Ladinsky* teams met and discussed potential refiling of a single lawsuit and coordination going forward.  I was not invited to that call, and neither I nor anyone from Cooley was on that call.  I understand from others who

31

attended that call that the different counsel groups struggled to work together, had conflicting strategies, and had a disagreement about decisional structure.  I also knew that, in the hours following that call, the ACLU and Lambda had decided not to continue to litigate in Alabama, and that ACLU of Alabama was considering joining the *Ladinsky* team.

- On the evening of April 16, 2022, I informed other *Walker* Counsel that Cooley would not be part of any further litigation regarding Alabama's transgender youth healthcare ban, including any effort to file a coordinated suit with *Ladinsky* Counsel, given the difficulties of coordinating the many groups involved and the disparate strategies.  Other *Walker* Counsel then informed *Ladinsky* Counsel of this decision by Cooley.

19.    **Topic 6.  With regard to the sixth topic identified in the Panel's July 8, 2022 Order,** I have no participation in or knowledge of "[a]ny and all actions that relate to the decision to file *Eknes-Tucker* in the United States District Court for the Middle District of Alabama."

20.    **Topic 7.  With regard to the seventh topic identified in the Panel's July 8, 2022 Order, my participation in or knowledge of "(1) preparation for the hearing in this matter (including circulation of any Q&A document), and (2) the questions expected to be asked or that were actually asked by the court at the May 20, 2022 hearing" is as follows:**

32

- On May 10, 2022, I learned of the Panel's Order in this matter instructing me and other counsel to appear before the Panel on May 20, 2022.  I immediately informed Cooley leadership, including Cooley's General Counsel, about the order and began consulting with them regarding how to proceed.

- On May 11, 2022, I and other *Walker* Counsel retained Barry Ragsdale to represent us in this matter.  That same day, we had an introductory call with Mr. Ragsdale.

- On May 13, 2022, I participated in a team call with Mr. Ragsdale regarding preparation for the May 20, 2022 hearing, including Mr. Ragsdale's plan to draft a written pre-hearing submission.  On this call, Mr. Ragsdale directed *Walker* Counsel to prepare work product to assist him in representing us at the May 20, 2022 hearing, including a document with potential questions that may be asked at the hearing, answers to those questions, and a chronology of relevant events.  I began preparing the chronology of relevant events in coordination with other *Walker* Counsel and attorneys representing *Walker* Counsel shortly after the May 13 meeting.  I also began assisting with preparation of *Walker* Counsel's pre-hearing submission.

- On May 14, 2022, I sent the chronology of relevant events to *Walker* Counsel for their review.

- On May 15, 2022, I participated in another team call with Mr. Ragsdale regarding preparation for the May 20 hearing.  I also sent the chronology of relevant events, which we discussed on the May 15 call, to Mr. Ragsdale and senior *Walker* Counsel.

- Also on May 15, 2022, the Q&A document was circulated to counsel for *Walker* Counsel and senior *Walker* Counsel by a member of the *Walker* team.  I began assisting with the preparation of that document shortly after receiving it.  I also forwarded the document to more junior *Walker* Counsel for their input.

- Between May 15, 2022 and May 19, 2022, I and other senior *Walker* Counsel provided input to the Q&A document and to the pre-hearing submission.

- On May 17, 2022, I participated in a team call with Mr. Ragsdale regarding preparation for the May 20 hearing.  We discussed the Q&A document at that meeting.

- On May 18, 2022, I participated in multiple team calls with Mr. Ragsdale regarding preparation for the May 20 hearing.

34

- On May 19, 2022, I traveled to Alabama for the May 20 hearing, and I participated in in-person meetings with Mr. Ragsdale.   During those meetings, we discussed the Q&A document with Mr. Ragsdale.   On the evening of May 19, 2022, the Q&A document was circulated to more junior *Walker* Counsel to verify the accuracy of the information in the document.

- My knowledge of "the questions . . . that were actually asked by the court at the May 20, 2022 hearing" is limited to the Panel's statements in open court during the May 20 hearing, including the Panel's description of the questions the Special Master planned to ask junior attorneys in their individual interviews.   I also believe I may have inferred general information about certain questions asked of certain witnesses based on a report of the June 17, 2022 status conference and my review of the Panel's July 8, 2022 Order.   None of the information or knowledge I have about the questions asked by the Court at the May 20, 2022 hearing came from counsel who testified at that hearing or who are the subject of this proceeding.

21.   **Topic 8.   With regard to the eighth topic identified in the Panel's July 8, 2022 Order, my knowledge of the "identify of [any] attorney, not included in the style of the original order, whom" I am "aware of being involved**

**in any input, recommendation, decision, or strategy regarding any of the subjects referenced above," is as follows:**

- I am aware that Shannon Minter from NCLR was involved as part of the *Ladinsky* team.

- I am aware that Josh Block at ACLU had some involvement in 2021 *Walker* strategy and at the beginning of our 2022 *Walker* effort.

- I am aware that Sharon McGowan at Lambda Legal had some involvement in the 2021 and 2022 *Walker* efforts.  Sharon McGowan and Camilla Taylor at Lambda Legal also were part of our efforts to prepare for the May 20, 2022 hearing.

- I informed Cooley's pro bono and communications teams of our dismissal of *Walker* and our decision not to refile any case.

- There are several attorneys at Cooley who are working as my counsel in this matter since May 10, 2022, including some who helped with our preparations in advance of the May 20, 2022 hearing.

22.     With respect to the Panel's directive that I attest to my compliance with the July 8, 2022 Order and to affirmatively indicate any non-compliance:  I have complied with the Panel's July 8, 2022 Order as modified by the Panel's July 25, 2022 Order.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing statements are true and correct to the best of my knowledge, information, and belief.

Dated:  July 27, 2022
Oakland, California


                                        /s/ *Kathleen Hartnett*
                                        Kathleen Hartnett

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 27, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will give notice of such filing to all counsel of record.

_/s/ Barry A. Ragsdale_
OF COUNSEL