CONFIDENTIAL
FOR IN CAMERA INSPECTION ONLY

# DECLARATION OF ABIGAIL HOVERMAN TERRY

1. I am an Associate at the Chicago office of King & Spalding LLP ("K&S"), admitted to practice law in 2017. I am a member in good standing of the Bar of the Courts of Illinois and Minnesota. I was one of the attorneys representing the plaintiffs in *Ladinsky v. Ivey* and now am one of the attorneys representing the plaintiffs in *Eknes-Tucker v. Marshall*.

2. The matters stated herein are based upon my personal knowledge and are true and complete to the best of my knowledge, information, and belief.

3. Other attorneys representing the plaintiffs in *Eknes-Tucker* are co-counsel from Lightfoot Franklin & White ("Lightfoot") and lawyers from advocacy groups (Southern Poverty Law Center ("SPLC"), GLBTQ Advocates & Defenders ("GLAD"), the Human Rights Campaign Foundation ("HRC"), and the National Center for Lesbian Rights ("NCLR") (collectively, the "Advocacy Groups")). These same groups also represented the plaintiffs in *Ladinsky*.

4. I primarily practice white-collar criminal defense, internal corporate investigations, and complex civil litigation in both federal and state courts, primarily in Illinois. K&S represented the plaintiffs in *Ladinsky* on a pro bono basis. K&S also represents the *Eknes-Tucker* plaintiffs on a pro bono basis.

5. I am not admitted to practice law in the State of Alabama. I was never admitted in the *Ladinsky* case. I am admitted *pro hac vice* in *Eknes-Tucker*.

CONFIDENTIAL
FOR IN CAMERA INSPECTION ONLY

6. I have never had decision-making authority related to the listed matters. At all times relevant to this matter, I was acting at the instruction of the partners at K&S.

7. I first became involved in the effort to fight the Vulnerable Child Compassion and Protection Act (the "Act") in April of 2020 when the firm began monitoring proposed legislation in the State of Alabama similar to the Act which was ultimately passed in 2022. In 2020 and 2021, these bills died in the Alabama legislature before being enacted. My primary role in this case since 2020 has been researching the merits of possible legal claims; drafting, editing, and filing our preliminary injunction motion; and compiling and filing motions for admission pro hac vice.

8. I have never had conversations with any of the *Walker* counsel.

9. **Judicial Assignments (Topics 1 and 2):**

   a. *Ladinsky* was first assigned to Judge Anna M. Manasco. Shortly thereafter, Judge Manasco recused herself. I am not aware of any action or plan that was intended to cause or did cause this recusal. At the time, it was my understanding that Judge Manasco may have recused herself because of personal ties to UAB. I do not have personal knowledge of whether that is true.

CONFIDENTIAL
FOR IN CAMERA INSPECTION ONLY

b.     *Ladinsky* was next assigned to Magistrate Judge Staci G. Cornelius. I do not have personal knowledge whether all parties consented to Judge Cornelius's jurisdiction. I am aware generally of communications discussing whether to consent to Judge Cornelius's jurisdiction, but I did not contribute to those discussions. I received a copy of the order reassigning the case apparently because there was not unanimous consent. I am not aware of any action or plan that was intended to cause or did cause this reassignment.

c.     After the parties did not unanimously consent to the jurisdiction of a Magistrate Judge, *Ladinksy* was next assigned to Judge Annemarie Carney Axon. I received a copy of the order from Judge Axon reassigning the case to Judge Burke, stating that the transfer was "in the interest of efficiency and judicial economy." I am not aware of any action or plan that was intended to cause or did cause this reassignment.

d.     I am aware that *Walker* counsel had filed their case in the Middle District and selected on the civil docket sheet that their case was related to *Corbitt*. I was not involved in that decision nor do I have firsthand knowledge about that decision. I am aware of

      discussions among *Ladinsky* counsel about the *Corbitt* case, whether the *Walker* case would be treated as a related case to *Corbitt*, and general updates on the briefing and ruling on the *Walker* Plaintiffs' motion for treatment as a related case. I am aware of a discussion about the potential for *Ladinsky* to be consolidated before Judge Thompson or for *Walker* to be transferred to the Northern District to be consolidated with *Ladinsky*. I believe there was a common interest agreement reached between *Ladinsky* counsel and *Walker* counsel so that we could communicate confidentially about our cases, but to my knowledge, a formal document was not executed. I never spoke with *Walker* counsel on those topics.

   e.    I am aware that *Walker* was transferred to the Northern District and assigned to Judge Liles C. Burke after Judge Marks ordered the *Walker* parties to show cause why the *Walker* case should not be transferred to the Northern District of Alabama in light of the *Ladinsky* case. I do not have personal knowledge regarding the reasons for that assignment.

   f.    *Eknes-Tucker* was first assigned to Judge R. Austin Huffaker, Jr. I received a copy of the order transferring the case to Judge

4

Burke, who was sitting by designation in the Middle District. The order stated that it was being reassigned to Judge Burke because he previously presided over two prior related cases. I am not aware of any action or plan that was intended to cause or did cause this assignment or reassignment.

g. As the *Ladinsky* case was assigned to Judges Manasco, Cornelius, and Axon, *Ladinsky* counsel communicated among one another any insight they had on the Judge either from personal experience or publicly available resources. These discussions were not intended to cause, nor did they cause, an assignment or reassignment.

h. As the *Ladinsky* case was assigned to Judges Cornelius and Axon, K&S partner Michael Shortnacy asked me to work with K&S's research librarians to pull background information on each of these two Judges from WestLaw, government websites, and other online resources, and to research the Judges' prior rulings on motions for preliminary injunctions or similar civil rights or constitutional cases. K&S later pulled similar background information with the help of the research librarians on Judge Burke, but not until after *Eknes-Tucker* was filed and

5

CONFIDENTIAL
FOR IN CAMERA INSPECTION ONLY

transferred to Judge Burke. K&S shared this information with co-counsel on *Ladinsky* and *Eknes-Tucker*. It is my firm's practice to pull this information for any judge to whom our cases are assigned. None of this research was intended to cause or did cause an assignment, reassignment, or recusal.

10. While the *Ladinsky* case was assigned to Judge Cornelius, on April 13, 2022, I called her chambers to ask about the Judge's requirements for filing pro hac vice motions, including the information that must be included in pro hac vice motions submitted to Judge Cornelius. In particular, we were concerned with rules that may require disclosure of counsels' home addresses in the public record. I left a message and do not recall receiving a returned call.

11. When the *Ladinsky* case was assigned to Judge Axon, during the morning of April 15, 2022, I called her chambers to ask about the Judge's requirements for filing pro hac vice motions, including the information that must be included in pro hac vice motions submitted to Judge Axon. I spoke to a member of Judge Axon's chambers staff who answered my questions about Judge Axon's rules and requirements for pro hac vice motions. I believe I spoke with Judge Axon's courtroom deputy. The chambers staff member also told me that she anticipated *Walker* was going to be transferred from the Middle District to the Northern District and was going to be assigned to Judge Axon.

CONFIDENTIAL
FOR IN CAMERA INSPECTION ONLY

12. **Parties, Venue, and Association of Law Firms (Topics 3 and 4)**

    a. I had no role in the decision-making process regarding which parties to name, which venue in which to file, or which law firms with which to associate for *Ladinsky*, *Walker*, or *Eknes-Tucker*. I am aware of discussions regarding where to file *Ladinsky*, and the Northern District of Alabama was selected. I did not contribute to those discussions.

    b. I generally was aware that K&S and the Advocacy Groups wanted an Alabama law firm to help advise on issues of local practice and rules, and that Lightfoot joined the team as local counsel for this purpose at some point in 2020 or 2021. I was not involved in these discussions.

    c. Before *Ladinsky* and *Eknes-Tucker* were filed, I participated on calls with a few of the potential parties to assist in evaluating their stories and suitability as parties and to assist in preparing declarations in support of our planned motion for a preliminary injunction. I was not otherwise materially involved in the discussions regarding the locations of those potential parties and was not involved with the identification or selection of potential plaintiffs.

CONFIDENTIAL
FOR IN CAMERA INSPECTION ONLY

    d.    I was not involved at all in the selection of parties, venue, or law firms for the *Walker* case.

    e.    After *Ladinsky* and *Walker* were dismissed, I am aware of discussions regarding whether *Walker* counsel and *Ladinsky* counsel would coordinate to file a consolidated lawsuit together. I understand that the American Civil Liberties Union ("ACLU") (who represented the *Walker* plaintiffs) advised *Ladinsky* counsel of their decision not to file another lawsuit a few days after the voluntary dismissal of the *Walker* case. I was not involved in discussions with *Walker* counsel on this topic. To my knowledge, since that communication, *Walker* counsel has not been involved with the *Eknes-Tucker* case in any way.

13.    **Dismissal of *Ladinsky* and *Walker* (Topic 5):**

    a.    Late in the afternoon on April 15, 2022, I received by email a copy of an unexpected order reassigning *Ladinsky* from Judge Axon, who had the first-filed case, to Judge Burke, who had *Walker*, the second-filed case.

    b.    Based on my experience with case consolidation and reassignment as a clerk for a District Court judge in the Northern District of Illinois, I was concerned that the reassignment of the

CONFIDENTIAL
FOR IN CAMERA INSPECTION ONLY

first-filed case to the second-filed judge was unexpected and irregular. It was important for *Ladinsky* to be the first-filed case so that we could be the lead counsel and our clients the lead plaintiffs.

c. I participated in a call with many of the *Ladinsky* counsel on April 15, 2022. Michael Shortnacy also participated in the call. He and I are the only lawyers I recall being present from K&S. Other participants I believe were on the call were Melody Eagan ("Ms. Eagan") and Amie Vague ("Ms. Vague") from Lightfoot, Shannon Minter ("Mr. Minter") from NCLR, and Jennifer Levi from GLAD. There may have been others from the Advocacy Groups on the call, but I cannot recall whom.

d. Just before the transfer of *Ladinsky* to Judge Burke, Ms. Eagan had spoken with the State of Alabama about filing a consent motion to consolidate *Walker* with *Ladinsky*, which was the first-filed case pending before Judge Axon. My understanding was that the State was already preparing such a motion.

e. We discussed the unexpected reassignment of the case to Judge Burke, whether the reassignment followed the first-filed rule, whether we would remain the first-filed case and lead counsel,

9

CONFIDENTIAL
FOR IN CAMERA INSPECTION ONLY

      Judge Burke's background for the case, whether he would be likely to grant our preliminary injunction motion, and our ability to file a voluntary dismissal under Rule 41 of the Federal Rules of Civil Procedure.

f.     We discussed whether we could file before Judge Axon a motion to reconsider the transfer. However, the belief was that Judge Axon had lost jurisdiction the moment she transferred the case away to Judge Burke.

g.     Because I have not practiced in Alabama or in its federal courts before, I did not have any personal knowledge about Judge Burke and deferred to the advice and knowledge from the lawyers at Lightfoot and the Advocacy Groups who were more experienced in practicing there.

h.     I left the call with the impression that we would be dismissing *Ladinsky* under Rule 41 of the Federal Rules of Civil Procedure that afternoon and filing a new lawsuit the following week, potentially jointly with *Walker* counsel (*see* ¶ 12(e)).

i.     After the call concluded, I communicated internally with my colleagues at K&S who were not on the call about this decision.

CONFIDENTIAL
FOR IN CAMERA INSPECTION ONLY

j.  Lightfoot and the Advocacy Groups spoke with *Walker* counsel and our clients, and Lightfoot filed the dismissal. I was not involved in any conversation with *Walker* counsel or with our clients about the dismissal.

14. **Filing *Eknes-Tucker* in the Middle District (Topic 6):** I did not participate substantively in any discussions about filing *Eknes-Tucker* in the Middle District. I am aware of discussions regarding potentially filing *Eknes-Tucker* in the Southern Division of the Northern District of Alabama, but that did not occur. I did not participate substantively in these discussions. On Monday, April 18, 2022, I was finalizing the motion for preliminary injunction. I was involved in some discussions with my co-counsel about a delay in the Clerk's office in issuing a case number from the Middle District, since I needed the case number to add to the preliminary injunction motion.

15. At the time following the voluntary dismissal of *Ladinsky* and the filing of *Eknes-Tucker*, I did not know about Judge Burke's April 18, 2022 Order in *Walker* (Doc. 24). I did not learn of this *Walker* Order until April 21, 2022, after one of my co-counsel shared a news article about *Eknes-Tucker* that referenced Judge Burke referring to "judge shopping." I am aware of discussions among *Ladinsky* counsel about these allegations on April 20 and 21, after the Attorney General tweeted about "judge shopping."

CONFIDENTIAL
FOR IN CAMERA INSPECTION ONLY

16. **Preparation for the May 20, 2022 Hearing (Topic 7):**

    a. In preparation for the hearing on May 20, 2022, K&S sought input from K&S's Office of General Counsel. I also had conversations with my colleagues and K&S's Office of General Counsel which I believe are privileged and confidential.

    b. Additionally, I reviewed a document provided by Lightfoot's in-firm counsel to K&S's General Counsel regarding the upcoming hearing, the contents of which I believe are privileged and confidential.[1] I also reviewed a document that was prepared with K&S General Counsel, the contents of which I believe are privileged and confidential.[2]

    c. Going into the May 20, 2022 hearing, I anticipated a hearing where counsel, specifically Jeffrey Doss and Melody Eagan on behalf of *Ladinsky* counsel, would present to the Panel. I did not prepare for a hearing where I would be called to testify under oath and did not review communications to prepare for my testimony. I was not instructed to answer questions a certain way nor told to tell the Panel anything but the truth; rather, the

---

[1] This document was intended to be and was marked attorney-client communication, attorney work product, joint defense/common interest privilege, and privileged and confidential.
[2] This document was intended to be and was marked privileged and confidential.

CONFIDENTIAL
FOR IN CAMERA INSPECTION ONLY

   partners at K&S repeatedly encouraged me to be open and candid with the panel if I were to be questioned. I also did not instruct any of my K&S colleagues to answer questions a certain way.

  d. I did not have any discussions with the Advocacy Groups or *Walker* counsel to prepare for the hearing. I have not discussed with anyone other than my attorneys (Bruce Rogers, Jennifer Wheeler, K&S's General Counsel Bob Thornton, and K&S's Deputy General Counsel Pat Brumbaugh) the questions that were actually asked by the court or the special master at the May 20, 2022 hearing, or the answers I provided to the special master.

 17. **Other Attorneys (Topic 8):** The only attorney I am aware of being involved in any of the listed matters that was not included in the original order is Shannon Minter.

 18. For purposes of discussing scheduling, workload, availability, and travel logistics, I have shared with my colleagues at K&S the fact that this proceeding is ongoing, that I have been ordered to file a declaration, that I am meeting with my counsel, and that I have been ordered to attend hearings in-person in Alabama on May 20 and August 3-4. I have also discussed this proceeding generally with my husband and close family and friends. I have not discussed the contents of my declaration, the questions asked of me by the special master on May

13

CONFIDENTIAL
FOR IN CAMERA INSPECTION ONLY

20, my answers to the special master on May 20, or the substance of my testimony with anyone except my attorneys. I will continue to comply with the Court's order in this regard.

I, Abigail Hoverman Terry, declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on August 1, 2022.

_____
Abigail Hoverman Terry